**NABISCO, INC. and Nabisco Brands Company, Plaintiffs–Counter–Defendants–Appellants,**

v.

**WARNER–LAMBERT COMPANY, Defendant–Counter–Claimant–Appellee.**

**Docket No. 99–7191**

United States Court of Appeals, Second Circuit.

Argued: Nov. 9, 1999

Decided: June 5, 2000

James B. Swire, Dorsey & Whitney LLP (Bruce R. Ewing, of counsel), New York, New York, for Plaintiffs–Counter–Defendants–Appellants.

Edward E. Vassallo, Fitzpatrick, Cella, Harper & Scinto (Nina Shreve, Timothy J. Kelly, Dolores Moro–Grossman, Bonny B. Rozzo, Fitzpatrick, Cella, Harper & Scinto; John N. O'Shea, Belinda I. Berman, of counsel), New York, New York, for Defendant–Counter–Claimant–Appellee.

Before: WINTER, Chief Judge, CARDAMONE, and STRAUB, Circuit Judges.

WINTER, Chief Judge:

Nabisco, Inc. and Nabisco Brands Company (collectively, "Nabisco") appeal from Judge Motley's order granting summary judgment to Warner–Lambert Co. on Nabisco's trademark infringement and unfair competition claims arising out of the marketing of competing, breath-freshening chewing gums. *See Nabisco v. Warner–Lambert Co.*, 32 F.Supp.2d 690 (S.D.N.Y. 1999). Nabisco claims that Warner–Lambert's use of the mark DENTYNE ICE infringes Nabisco's rights in ICE BREAKERS. We affirm on the ground that there is no genuine issue of material fact as to whether consumers are likely to confuse the source of the parties' respective chewing gums.

## BACKGROUND

The background is more fully set forth in the district court's opinion, *see id.* at 692–94, with which we assume familiarity. We summarize here only those undisputed facts pertinent to our disposition.

Nabisco has sold a breath-freshening chewing gum under the federally registered trademark ICE BREAKERS since December 1995. ICE BREAKERS gum is sold as a traditional, mint-flavored stick in a metallic-blue, holographic, brick-shaped package featuring the stylized mark ICE BREAKERS in white, upper-case letters on the front and back panels.

Warner–Lambert first offered DENTYNE ICE for sale in Canada as an extension of its well-known line of DENTYNE brand chewing gum. In March 1997, Warner–Lambert launched the nationwide sale of DENTYNE ICE in the United States. The gum is sold in three flavors—peppermint, spearmint, and cinnamon—each as a candy-coated pellet in packages of twelve contained in foil-sealed, clear plastic with a cardboard overlap. Both the DENTYNE and the ICE components of Warner–Lambert's mark are prominently displayed across the package's front panel. "Dentyne" appears across the top-third; and "Ice," in stylized lettering, appears across the middle third and on the foil wrap around each coated pellet.

We reproduce below to-scale copies of the front panels of the respective packages of the parties' products:

In June 1996, Warner–Lambert filed an intent-to-use application for federal registration of DENTYNE ICE in the United States Patent and Trademark Office ("PTO"). Nabisco opposed that application in the PTO and thereafter filed a complaint against Warner–Lambert in the Southern District of New York. The PTO proceedings have been stayed pending resolution of the present matter.

Nabisco's complaint claimed: (i) infringement of a registered trademark, in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1); (ii) false designation of origin, in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1); and (iii) trademark infringement and unfair competition in violation of New York common law. Warner–Lambert's answer denied Nabisco's material allegations and asserted counterclaims for appropriate declaratory relief. Later, Warner–Lambert filed the instant motion for summary judgment on Nabisco's claims. The district court initially denied the motion but then *sua sponte* reconsidered that denial and granted the motion. *See Nabisco*, 32 F.Supp.2d at 694. Final judgment disposing of Nabisco's claims and Warner–Lambert's counterclaims was thereafter entered, and this appeal followed.

## DISCUSSION

We review the grant of summary judgment *de novo. See Ginsberg v. Healey Car & Truck Leasing, Inc.*, 189 F.3d 268, 270 (2d Cir.1999). Summary judgment is appropriate when, after reviewing the evidence in the light most favorable to the non-moving party, there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c); *Tops Mkts., Inc. v. Quality Mkts., Inc.*, 142 F.3d 90, 95 (2d Cir.1998). A dispute is not "genuine" unless "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

■ To prevail on its trademark infringement and unfair competition claims, Nabisco must prove that ICE BREAKERS is a protectable trademark and that Warner–Lambert's use of DENTYNE ICE is likely to confuse consumers as to the source or sponsorship of Nabisco's ICE BREAKERS product. *See Sports Auth., Inc. v. Prime Hospitality Corp.*, 89 F.3d 955, 960 (2d Cir.1996); *Bristol–Myers Squibb Co. v. McNeil–P.P.C., Inc.*, 973 F.2d 1033, 1048 (2d Cir.1992). The parties agree, and, given our disposition of the matter, we may assume without deciding, that ICE BREAKERS is suggestive when used in connection with chewing gum and is therefore protectable as a trademark without proof that consumers associate it with Nabisco's product. *See Lane Capital Management, Inc. v. Lane Capital Management, Inc.*, 192 F.3d 337, 344 (2d Cir. 1999) ("[S]uggestive marks are deemed inherently distinctive. Their intrinsic nature serves to identify a particular source of a

product, so they will be automatically protected."). However, a reasonable trier could not find for Nabisco on the likelihood of confusion element.

■■ In addressing likelihood of confusion, we apply the eight factors set forth by Judge Friendly in *Polaroid Corp. v. Polarad Electronics Corp.*, 287 F.2d 492, 495 (2d Cir.1961):

(i) the strength of plaintiff's mark;

(ii) the similarity of the parties' marks;

(iii) the proximity of the parties' products in the marketplace;

(iv) the likelihood that the plaintiff will bridge the gap between the products;

(v) actual confusion;

(vi) the defendant's intent in adopting its mark;

(vii) the quality of the defendant's product; and

(viii) the sophistication of the relevant consumer group.

*See also Estee Lauder Inc. v. Gap, Inc.*, 108 F.3d 1503, 1510 (2d Cir.1997). The predicate facts are reviewed on a clearly erroneous standard. The facts here are undisputed, however, and the issue is whether, on balance, the factors establish a likelihood of confusion. That is a question of law. *See Bristol–Myers Squibb Co.*, 973 F.2d at 1043.

■ Although we generally do not treat any one *Polaroid* factor as dispositive in the likelihood of confusion inquiry, *see Morningside Group Ltd. v. Morningside Capital Group, L.L.C.*, 182 F.3d 133, 139 (2d Cir.1999); *Vitarroz Corp. v. Borden, Inc.*, 644 F.2d 960, 965–67 (2d Cir.1981), we have often stated that "the evaluation of the *Polaroid* factors is not a mechanical process where the party with the greatest number of factors weighing in its favor wins. Rather, a court should focus on the ultimate question of whether consumers are likely to be confused," *Paddington Corp. v. Attiki Importers & Distribs., Inc.*, 996 F.2d 577, 584 (2d Cir.1993) (internal quotation marks and citation omitted).

Accordingly, in an appropriate case, the "similarity of the marks" factor can be dispositive and will warrant summary judgment for an infringement defendant "if the court is satisfied that the . . . marks are so dissimilar that no question of fact is presented." *See Resource Developers, Inc. v. Statue of Liberty–Ellis Island Found., Inc.*, 926 F.2d 134, 141 (2d Cir.1991) (quoting *Universal City Studios, Inc. v. Nintendo Co.*, 746 F.2d 112, 116 (2d Cir.1984)).

■ We therefore begin with an analysis of the marks themselves. DENTYNE ICE and ICE BREAKERS are at best marginally similar because of the common use of "Ice." Of course, the varying placement of "Ice" is a major difference. More critically, Warner–Lambert prominently—indeed primarily—identifies DENTYNE ICE as a member of the DENTYNE family of gums, a brand that Nabisco concedes is widely recognized by the consuming public. Warner–Lambert's prominent use of its well-known house brand therefore significantly reduces, if not altogether eliminates, the likelihood that consumers will be confused as to the source of the parties' products. *See W.W.W. Pharm. Co v. Gillette Co.*, 984 F.2d 567, 573 (2d Cir. 1993) (RIGHT GUARD SPORT STICK not confusingly similar to SPORTSTICK as matter of law; "when a similar mark is used in conjunction with a company name, the likelihood of confusion may be lessened"); *Bristol–Myers Squibb Co.*, 973 F.2d at 1045–46 (overturning factual finding of confusing similarity between packages for EXCEDRIN PM and TYLENOL PM; "the prominence of the trade names on the two packages weighs heavily against a finding of consumer confusion"); *see also Luigino's, Inc. v. Stouffer Corp.*, 170 F.3d 827, 831 (8th Cir.1999) (MICHELINA'S LEAN 'N TASTY not confusingly similar to STOUFFER'S LEAN CUISINE as a matter of law; "[t]he use of different colors and typefaces, as well as the prominent display of the house marks convey perceptible distinctions between the products"); *Universal Money Ctrs.*,

*Inc. v. American Tel. & Tel. Co.*, 22 F.3d 1527, 1531 (10th Cir.1994) (AT & T UNIVERSAL CARD not confusingly similar to UNIVERSAL MONEY marks due, in part, to AT & T's prominent use of distinctive house mark).

■ Our inquiry does not end with a comparison of the marks themselves. Rather, in determining whether two marks are confusingly similar, we must "appraise the overall impression created by ... the context in which they are found and consider the totality of factors that could cause confusion among prospective purchasers." *Streetwise Maps, Inc. v. Vandam, Inc.*, 159 F.3d 739, 744 (2d Cir.1998) (internal quotation marks omitted); *see also Lang v. Retirement Living Publ'g Co.*, 949 F.2d 576, 581 (2d Cir.1991) ("In [determining whether marks are confusingly similar], a court should look at the general impression created by the marks, taking into account all factors that potential purchasers will likely perceive and remember."); *Jim Beam Brands Co. v. Beamish & Crawford Ltd.*, 937 F.2d 729, 735 (2d Cir.1991) ("[I]n determining the similarity of marks in an infringement action, a court must examine the visual appearance of each mark in the context of its use.").

This further analysis demonstrates beyond doubt that whatever source-confusion might remain notwithstanding Warner–Lambert's prominent use of its DENTYNE house brand name will be dispelled by a combination of other aspects of the commercial presentation of the parties' respective marks. As can be seen from the front-panel copies reproduced above, the parties present their marks in starkly different typefaces and styles. Moreover, although the packages for DENTYNE ICE and ICE BREAKERS share a generally rectangular shape, there are salient differences in both their dimensions and overall look that result in distinctly different commercial impressions. The DENTYNE ICE package is noticeably longer and wider than the ICE BREAKERS package.

And the DENTYNE ICE package is boxy and flat relative to the ICE BREAKERS package, which has a traditional, brick-like shape. Further, although both packages use blue and white colors, the shades and patterns of these colors are different. The front panel of the DENTYNE ICE package has a light-blue background broken by a thick, dark-blue band and two smaller white bands. Nabisco's package, on the other hand, has a homogenous, metallic-blue background broken only by the ICE BREAKERS mark itself. Further still, the wrapping used on the respective packages is dissimilar. ICE BREAKERS comes in a holographic wrapper, while DENTYNE ICE is sold in a non-holographic, foil-sealed blister pack with a cardboard overwrap. Finally, the products are sold in different forms: DENTYNE ICE as a candy-coated pellet and ICE BREAKERS as a traditional stick.

The cumulative effect of the differences between the parties' products and in the commercial presentation of their marks creates distinct marketplace impressions. The distinctions here are far more than a cumulation of minor differences between the parties' marks, packaging, and product forms that does not ordinarily establish the absence of likelihood of confusion as a matter of law. *Cf. Paddington Corp.*, 996 F.2d at 586 (concluding that marks and packages for Greek liqueur products "# 1 Ouzo" and "No. 12 Ouzo" were confusingly similar, and overturning district court finding to the contrary, despite "minimal" differences in labels, typeface, and bottle shape). In the present case, Warner–Lambert's prominent use of its DENTYNE house mark significantly reduces, if not altogether eliminates, any likelihood of consumer confusion. *See Bristol–Myers Squibb Co.*, 973 F.2d at 1046 ("[T]he prominent presence of well known trade names goes far toward countering any suggestion of consumer confusion arising from any of the other *Polaroid* factors."). The other significant differences between the respec-

48

tive packages and products suffice to dispel completely any residual confusion.

Having determined that the parties' use of their DENTYNE ICE and ICE BREAKERS marks is so dissimilar as to require judgment for Warner–Lambert, we need not examine the remaining *Polaroid* factors and express no view of the district court's analysis of them. *See Resource Developers*, 926 F.2d at 141–42 (affirming summary judgment for defendant on claim that Statue of Liberty flag infringed plaintiff's trade dress "[b]ecause ... the flags are so materially different that no question of fact was presented on the issue of likelihood of their confusion"); *see also Kellogg Co. v. Pack'em Enters.*, 951 F.2d 330, 332–33 (Fed.Cir.1991) ("substantial and undisputed differences" between parties' use of FROOTEE ICE and FROOT LOOPS warranted summary judgment for federal registration applicant in opposition proceeding; "the dissimilarity of the marks in their entireties itself made it unlikely that confusion would result from the simultaneous use of the marks" (internal quotation marks omitted)).

We therefore affirm.