**FRIESLAND BRANDS, B.V., Plaintiff,**

v.

**VIETNAM NATIONAL MILK COMPANY A/K/A Vinamilk and Tsai's International Trading Co., Defendants.**

**No. 00 Civ. 4287(GWG).**

United States District Court,
S.D. New York.

Oct. 16, 2002.

As Amended Oct. 30, 2002.

Charles H. Knull, Cynthia H. Fareed, Graham, Campaign, P.C., New York City, for plaintiff.

Jeffrey A. Schwab, Richard L. Crisona, Abelman, Frayne & Schwab, New York City, for defendants.

*OPINION AND ORDER*

GORENSTEIN, United States Magistrate Judge.

Defendants Vietnam National Milk Company and Tsai's International Trading Co. (collectively, "Vinamilk") move for summary judgment dismissing all but one of the claims of plaintiff Friesland Brands, B.V. Friesland cross-moves for a finding that the defendants have acted in "bad faith" under trademark law. The parties have consented to this case being adjudicated by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the reasons set forth below, the defendants' motion is granted in part and denied in part. The plaintiff's motion is denied.

## I. FACTUAL BACKGROUND

Except as otherwise noted, the following facts are not in dispute.

Friesland is a Netherlands corporation and the owner of United States Trademark number 1,320,968, the design mark LONGEVITY (the "Longevity mark"). *See* Trademark Registration Certificate (reproduced as Ex. B to Declaration of Charles Knull In Support of Plaintiff's Motion and Opposing Defendants' Motion, dated March 15, 2002 ("Knull Dec.")). This mark is used on Friesland's labels for condensed milk (the "Longevity Brand Label"). *See* Declaration of Jeffrey A. Schwab in Support of Defendants'/Counterclaim Plaintiffs' Motion for Summary Judgment, dated February 15, 2002 ("Schwab Dec."), Ex. A. Vietnam Milk Company, a Vietnamese corporation, is the manufacturer of a condensed milk product sold in 14 ounce cans, which Tsai's International Trading Company, a United States corporation, distributes in this country. These cans bear several different labels. *See* Schwab Dec., Ex. B, C.

The Longevity mark consists of the words "Longevity Brand" in block letters above a drawing of an old man with white hair and beard wearing a robe. Chinese ideograms appear vertically to the left of the old man. Below the man in block letters are written the Vietnamese words "SUA ONG THO." The trademark registration asserts that the Chinese characters translate to "longevity sweetened condensed milk." *See* Knull Dec., Ex. B. Friesland contends that the Vietnamese word "Sua" means milk and "Ong Tho" means "longevity." Knull Dec., Ex. H at 18. Friesland also claims that the old man is an "extremely popular" Chinese god of Longevity who is "immediately recognizable to anyone raised in China or in a Chinese community overseas, or for that matter any East Asian country." Report by Elizabeth Brotherton, dated December 13, 2001 ("Brotherton Report") (reproduced as Ex. Y to Knull Dec.), at 1.

On the Longevity Brand Label, the Longevity mark has a white background and blue borders. *See* Longevity Brand Label (reproduced as Ex. A to Schwab Dec.). The words "Longevity Brand" are printed in large blue capital letters. Below these words, the words "Full Cream" are printed in smaller blue capital letters. Immediately under these words is the phrase "Sweetened Condensed Milk," also in blue capital letters (larger than the words "Full Cream," but smaller than the words "Longevity Brand"). The Chinese characters are in red and the Vietnamese words

"SUA ONG THO" below the old man are in red block letters.

The Longevity Brand Label is used on a 14-ounce condensed milk can. The top of the can is stamped with concentric circles in relief around a stamp of the old man. Embossed on the top of the can is the word "Longevity" and five Chinese characters. *See* Knull Dec., Ex. O.

█ There are two basic Vinamilk labels that are at issue in this case.[1] One bears the words "Sua Ong Tien" and features a drawing of an old man with children and a deer in the background (the "Old Man with Children" label). Schwab Dec., Ex. B. The other bears the words "Sua Phuc Loc Tho" and features a drawing of three men (the "Three Gods" labels). *Id.*, Ex. C. Plaintiff contends these men represent three Chinese gods, including the God of Longevity. Brotherton Report at 2. Both of these labels have a white background; the word "Vinamilk" in large blue capital letters across the top; the words "condensed dairy product" in blue capital letters below that; and Chinese characters along one side of the drawing. The Chinese characters are in red and the Vietnamese words below the old man are in red block letters. The top of the Old Man with Children can is stamped with concentric circles in relief.

In its Amended Complaint, Friesland alleges that the labels Vinamilk applies to its condensed milk cans infringe or dilute the Longevity brand mark.[2] Specifically, the Amended Complaint asserts the following six claims: (1) federal trademark in-

---

1. A third label used by Vinamilk, identified as the "Sua Ong Tho" label, is not at issue because plaintiff has proffered no evidence that cans bearing the Sua Ong Tho label have entered the United States. *See, e.g., Atlantic Richfield Co. v. Arco Globus Int'l Co., Inc.*, 150 F.3d 189, 192 n. 4 (2d Cir.1998) ("we have never applied the Lanham Act to extraterritorial conduct absent a substantial effect on United States commerce").

2. Friesland has opposed the summary judgment motion on the assumption that it has asserted a claim of trade dress infringement. *See* Memorandum of Law In Support of Plaintiff's Cross–Motion for Finding Defendants Action in Bad Faith and In Opposition to Defendants' Motion for Summary Judgment, dated March 15, 2002, at 17. The Amended Complaint, however, does not assert such a claim.

fringement, 15 U.S.C. § 1114(1); (2) federal dilution, 15 U.S.C. § 1125(c); (3) federal unfair competition, 15 U.S.C. § 1125(a); (4) common law unfair competition; (5) New York deceptive practices, N.Y. Gen. Bus. L. § 133; and (6) New York Anti-dilution, N.Y. Gen. Bus. L. § 368(d). Amended Complaint at 9–14. Vinamilk has moved for summary judgment on all claims.

## II. *DISCUSSION*

### A. *Summary Judgment Standard*

A district court may grant summary judgment only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *New York Stock Exchange, Inc. v. New York Hotel, LLC*, 293 F.3d 550, 554 (2d Cir. 2002). A genuine issue is one that "may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir.1999). A material issue is a "dispute[ ] over facts that might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505. Thus, " '[a] reasonably disputed, legally essential issue is both genuine and material' " and precludes a finding of summary judgment. *McPherson*, 174 F.3d at 280 (quoting *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir.1996)).

When determining whether a genuine issue of material fact exists, courts must resolve all ambiguities and draw all factual inferences in favor of the non-moving party. *McPherson*, 174 F.3d at 280. Nonetheless, "mere speculation and conjecture is insufficient to preclude the granting of the motion." *Harlen Assocs. v. Incorporated Village of Mineola*, 273 F.3d 494, 499 (2d Cir.2001). While trademark infringement and unfair competition cases are often fact intensive, summary judgment may nevertheless be appropriate in such cases. *See, e.g., Lois Sportswear, U.S.A. Inc. v. Levi Strauss & Co.*, 799 F.2d 867, 876 (2d Cir.1986); *Patsy's Brand, Inc. v. I.O.B. Realty, Inc.*, 2001 WL 170672, at *14 (S.D.N.Y. Feb. 21, 2001); *Lane Capital Mgmt., Inc. v. Lane Capital Mgmt., Inc.*, 15 F.Supp.2d 389, 400 (S.D.N.Y.1998).

### B. *Trademark Infringement Claim*

Friesland claims that Vinamilk has infringed its Longevity mark in violation of 15 U.S.C. § 1114(1). Section 1114(1) prohibits, among other things, the unauthorized use in commerce of any "reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion." *New York Stock Exchange, Inc.*, 293 F.3d at 554. "Confusion exists where there is a likelihood that an appreciable number of ordinarily prudent purchasers are likely to be misled, or indeed simply confused, as to the source of the goods in question." *Id.; accord Federal Express Corp. v. Federal Espresso, Inc.*, 201 F.3d 168, 174 (2d Cir.2000); *Gruner + Jahr USA Publishing v. Meredith Corp.*, 991 F.2d 1072, 1075 (2d Cir.1993); *Lang v. Retirement Living Publishing Co., Inc.*, 949 F.2d 576, 579–80 (2d Cir.1991).

To determine whether there is a likelihood of confusion between two or more marks, courts in this Circuit apply the eight factors set forth in *Polaroid Corp. v. Polarad Elecs. Corp.*, 287 F.2d 492 (2d Cir.), *cert. denied*, 368 U.S. 820, 82

S.Ct. 36, 7 L.Ed.2d 25 (1961):(i) the strength of the plaintiff's trademark; (ii) the degree of similarity between the parties' marks; (iii) the proximity of the products; (iv) the likelihood that the plaintiff will "bridge the gap" between the products; (v) the existence of actual confusion; (vi) the defendant's good faith; (vii) the quality of the defendant's product; and (viii) the sophistication of the consumers. *Id.* at 495; *see, e.g., New York Stock Exchange, Inc.,* 293 F.3d at 555 (citing *Polaroid,* 287 F.2d at 495). The "evaluation of the *Polaroid* factors is not a mechanical process where the party with the greatest number of factors weighing in its favor wins. Rather a court should focus on the ultimate question of whether consumers are likely to be confused." *Nabisco, Inc. v. Warner–Lambert Co.,* 220 F.3d 43, 46 (2d Cir.2000) (citation and internal quotation marks omitted). In addition, these eight factors are not dispositive and other circumstances may be relevant to the likelihood of confusion analysis, depending on the particular case. *See Streetwise Maps, Inc. v. Vandam, Inc.,* 159 F.3d 739, 743 (2d Cir.1998).

The Court examines each factor in turn.

### 1. *Strength of the Mark*

■ The strength of the mark "refers to a mark's 'tendency to identify the goods sold under the mark as emanating from a particular ... source.'" *Arrow Fastener Co., Inc. v. Stanley Works,* 59 F.3d 384, 391 (2d Cir.1995) (quoting *McGregor–Doniger, Inc. v. Drizzle, Inc.,* 599 F.2d 1126, 1131 (2d Cir.1979)). The strength of a trademark consists of its inherent and acquired capacity to identify the source of a product. *See Time, Inc. v. Petersen Publishing Co. LLC,* 173 F.3d 113, 117 (2d Cir.1999). Thus, courts assess a mark's strength by considering two factors: "(1) the degree to which it is inherently distinctive; and (2) the degree to which it is distinctive in the marketplace." *W.W.W.*

*Pharm. Co., Inc. v. Gillette Co.,* 984 F.2d 567, 572 (2d Cir.1993).

■ To gauge the inherent distinctiveness of a mark, courts use four categories of distinctiveness ranging from the least distinctive to the most: (1) generic, (2) descriptive, (3) suggestive, and (4) arbitrary or fanciful. *Id.* "A generic mark is generally a common description of goods [—] one that refers, or has come to be understood as referring, to the genus of which the particular product is a species." *Genesee Brewing Co., Inc. v. Stroh Brewing Co.,* 124 F.3d 137, 143 (2d Cir.1997) (internal quotation marks and citations omitted). A descriptive mark describes a product's features, qualities, ingredients or the use to which a product is put in ordinary language. *Id.* A suggestive mark, on the other hand, "employs terms which do not describe but merely suggest the features of the product, requiring the purchaser to use imagination, thought and perception to reach a conclusion as to the nature of goods." *Id.* (citation and internal quotation marks omitted). Finally, the term fanciful applies to words invented solely for their use as a trademark. *Id.* (citation omitted). "When the same legal consequences [that attach to a fanciful mark] attach to a common word, i.e., when it is applied in an unfamiliar way, the use is called 'arbitrary.'" *Abercrombie & Fitch Co. v. Hunting World, Inc.,* 537 F.2d 4, 11 n. 12 (2d Cir.1976).

Friesland contends that the Longevity mark is "at least ... suggestive [ ] with fanciful elements." Memorandum of Law In Support of Plaintiff's Cross–Motion for Finding Defendants Action in Bad Faith and In Opposition to Defendants' Motion for Summary Judgment, dated March 15, 2002 ("Pl.Mem."), at 11. The defendants argue that the mark is "at best suggestive, if not descriptive." Memorandum of Defendants/Counterclaim Plaintiffs In Sup-

port of Their Motion for Summary Judgment, dated February 15, 2002 ("Defs.Mem."), at 15. Construing the evidence most favorably to Friesland on this motion for summary judgment, the Court concludes that a reasonable jury could find that the Longevity mark is at least suggestive with some fanciful elements. The mark features the word "longevity" along with a picture of an old man whom Friesland contends is the God of Longevity. *See* Brotherton Report at 1. The mark certainly does not describe the features, ingredients or uses of the condensed milk product. Rather, at most it might be thought to "suggest[ ] features of the product"—that is, that by drinking the product one can achieve a long life. Generally, a suggestive term is entitled to protection and recognition as a strong mark. *Hasbro, Inc. v. Lanard Toys, Ltd.*, 858 F.2d 70, 77 (2d Cir.1988). In addition, because the Longevity mark features an original drawing of an old man, this adds to its distinctiveness. Moreover, Friesland also filed an affidavit under 15 U.S.C. § 1065 that rendered its registration of the mark incontestable as of 1990, Knull Dec., Ex. D, which entitles Friesland "to a presumption that its registered trademark is inherently distinctive." *Sporty's Farm L.L.C. v. Sportsman's Market, Inc.*, 202 F.3d 489, 497 (2d Cir.2000) (quoting *Equine Technologies, Inc. v. Equitechnology, Inc.*, 68 F.3d 542, 545 (1st Cir.1995)), *cert. denied*, 530 U.S. 1262, 120 S.Ct. 2719, 147 L.Ed.2d 984 (2000).

The fact that the mark is "inherently distinctive" does not answer the question of strength of the mark because a finding of inherent distinctiveness "does not guarantee ... that the mark is a strong one." *Streetwise Maps*, 159 F.3d at 744 (quoting *Gillette*, 984 F.2d at 572); *Lang*, 949 F.2d at 581 (suggestiveness is not necessarily dispositive on the issue of a mark's strength). Rather, "the strength of the mark turns on its origin-indicating quality,

in the eyes of the purchasing public." *Lang*, 949 F.2d at 581 (internal quotation marks and citation omitted).

"The factors relevant to the inquiry of secondary meaning include advertising expenditures, consumer studies, sales, competitors' attempts to plagiarize the mark, and length and exclusivity of the mark's use." *Arrow Fastener*, 59 F.3d at 393. Friesland has put forth virtually no admissible evidence in support of these factors. While they state that they have used the mark in the United States for over twenty years, Pl. Mem. at 13, they cite no record evidence for this proposition.

Nonetheless, based on the mark's incontestability and its inherent distinctiveness (and in the absence of additional evidence to suggest that the mark has a strong secondary meaning), a jury could at a minimum reasonably conclude that the Longevity mark is at least in the middle of the spectrum of strong marks.

2. *Similarity of the marks*

"In applying this factor, courts consider whether the similarity of the marks is likely to cause confusion among potential customers." *Arrow Fastener*, 59 F.3d at 394; *Jim Beam Brands Co. v. Beamish Crawford Ltd.*, 937 F.2d 729, 735 (2d Cir. 1991) ("in determining the similarity of marks in an infringement action, a court must examine the visual appearance of each mark in the context of its use"), *cert. denied*, 502 U.S. 1094, 112 S.Ct. 1169, 117 L.Ed.2d 415. In judging similarity, courts must " 'appraise the overall impression created by ... the context in which they are found and consider the totality of factors that could cause confusion among prospective purchasers.' " *Nabisco*, 220 F.3d at 47 (quoting *Streetwise Maps*, 159 F.3d at 744).

The Longevity mark has none of the color elements of the label. Instead, it has

in its center a drawing of an old, balding bearded man wearing a robe and holding an orb. Above the drawing in capital letters is "Longevity Brand." Below the drawing are the Vietnamese words "SUA ONG THO" in capital letters. To the left of the drawing are five Chinese ideographs. Friesland has submitted evidence, which must be construed in its favor, that the Chinese words translate to "longevity sweetened condensed milk." *See* Deposition of Hai Choi, dated December 5, 2001 (reproduced as Ex. L to Knull Dec.), at 95:13–23; Deposition of Vu Thi Tam Trinh, dated October 28, 2001 (reproduced as Ex. F to Knull Dec.), at 32:21–25, 33:1–7.

Vinamilk's two labels each have in their centers drawings of one or more old men. In the "Old Man With Children" label, the drawing consists of an old, balding bearded man wearing a robe, holding what appears to be a cup, and standing in front of two toddlers—one of whom is holding a spherical object. In the "Three Gods" label, the drawing consists of three men, one of whom is an old, balding bearded man wearing a robe and holding an orb. For both labels, the word "Vinamilk" is above the drawing in capital letters, followed in much smaller letters by the words "Sweetened Condensed Milk." Below the drawing are the Vietnamese words "SUA ONG TIEN" in capital letters on the first label and "SUA PHUC LOC THO" on the second. To the left of the drawing are Chinese ideographs—four for the first label and five for the second. Friesland states that the Chinese words on these labels translate to "Immortality Master Condensed Milk" (for the Old Man with Children label) and "God of Happiness, God of Wealth and God of Long Life [Brand] Condensed Milk" (for the Three Gods label). Brotherton Report at 2. The Vietnamese words on the Old Man with Children label refer to someone who lives a long time. Knull Dec., Ex. L at 95.

As may be apparent from the description, and is even more apparent on a visual inspection, the labels share many common elements in appearance including the placement of lettering for the brand name, the size of the lettering, the placement of the drawing at the center, the placement of Chinese ideographs and the placement of the Vietnamese words. Obviously, there are differences in the labels, too—chief among them the brand names written at the top of the label, some differences in the Chinese ideographs (not readily noticeable to a non-reader of Chinese) and the fact that the drawings are significantly different in general appearance. Friesland, however, has submitted evidence that the old man appearing on all the labels is recognizable as the "God of Immortality"—a fact that it asserts would be readily understood to someone familiar with Chinese culture. Brotherton Report at 1–2. In addition, as noted above, it has submitted evidence that the Chinese ideograms on both the Longevity and Vinamilk labels refer to longevity or the God of Long Life.

Vinamilk argues that, even if it is true that the depictions on the labels are all recognizable as the God of Immortality, this should not show any particular similarity. They analogize their milk labels to a Christmas product that contains a distinctive rendition of Santa Claus on the label. They point out that it would be unreasonable to prevent some other company from putting out the same Christmas product that depicted a different rendition of Santa Claus. Defs. Mem. at 3–4. The problem with this argument is that, while one might expect to see Santa Claus on a Christmas product, there is no basis in the record to conclude that longevity, or the "God of Immortality," has any pre-existing association with the drinking of sweetened condensed milk. Indeed, given the amount of sugar in the product (23 grams in two tablespoons, which is more than six

times the sugar contained in a similar amount of a typical soft drink), one might conclude just the opposite.

Taking all inferences in favor of the plaintiff, it is this association—the God of Immortality (or the concept of longevity) with sweetened condensed milk—that constitutes the suggestive (and potentially fanciful) element of the Longevity trademark. For these reasons, when a consumer sees a reference to immortality or longevity associated with sweetened condensed milk, the consumer will have reasons to view that mark as similar to the Vinamilk mark. When combined with the references to longevity in the Chinese (and perhaps Vietnamese) writing, the existence of a ·similarity in the labels becomes apparent.

Of course, before us is a motion ·for summary judgment, where all inferences must be made in favor of Friesland. In the end, we cannot conclude that this is a case where the marks "are so dissimilar that no question of fact is presented." *Nabisco*, 220 F.3d at 46; *Universal City Studios, Inc. v. Nintendo Co., Ltd.*, 746 F.2d 112, 115 (2d·Cir.1984). Rather, considering the "overall impression" of the Longevity mark and the Vinamilk label, the Court believes that a reasonable jury could find a strong similarity in these marks sufficient to cause a likelihood of confusion among the purchasing public. *See Nabisco*, 220 F.3d at 47 (comparison of marks focuses on "overall impression ·... the context in which they are found and ... totality of factors that could cause confusion ...". Thus, this factor strongly favors Friesland.

### 3. *The proximity of the marks*

This factor concerns the competitive distance.between the products. *Arrow Fastener*, 59 F.3d at 396. The defendants concede that "the products are essentially the same, they are aimed at the same type of ethnic Chinese or Vietnamese customer, and that they are sold in essentially the same sort of stores in at least some overlapping geographic areas." Defs. Mem. at 19. Accordingly, this factor also favors Friesland. *See, · e.g., Cline v. 1–888–Plumbing Group, Inc.*, 146 F.Supp.2d 351, 367 (S.D.N.Y.2001) ("Plaintiff's and Defendants' marks target the same consumers, through the same medium, for the same service, and are in this regard likely to be confused ... therefore, this factor weighs heavily in Plaintiff's favor.").

### 4. *Bridging the gap*

This factor focuses on the likelihood that the senior user of the mark (Friesland) will bridge the gap and enter the junior user's market. Because both Friesland's and the Vinamilk products already compete in the same market, there is no·gap to be bridged. Some case law suggests that this fact means that the "bridging the gap" factor is irrelevant. to the analysis. *See, e.g., Paddington Corp. v. Attiki Importers & Distributors, Inc.*, 996 F.2d 577, 586 (2d Cir.1993); *Bristol–Myers Squibb Co. v. McNeil–P.P.C., Inc.*, 973 F.2d 1033, 1044 (2d Cir.1992); *Cline*, 146 F.Supp.2d at 367; *Orb Factory, Ltd. v. Design Science Toys, Ltd.*, 1999 WL 191527, at *13 (S.D.N.Y. Apr. 7, 1999). Other case law holds that competition in the same market means this factor favors a likelihood of confusion. *Hasbro*, 858 F.2d at 78 (the fact that "both users operate in the same market ... indicates that a greater likelihood of confusion exists than if they operated in different markets"); *accord Societe Des Hotels Meridien v. LaSalle Hotel Operating Partnership, LP*, ·2002 WL 1918136, at *3 (S.D.N.Y. Aug. 19, 2002); *Tri–Star Pictures, Inc. v. Unger*, 14 F.Supp.2d 339, 356 (S.D.N.Y.1998); *Simon & Schuster, Inc. v. Dove Audio, Inc.*, 970 F.Supp. 279, 298 (S.D.N.Y.1997).

This Court has already considered the fact that the products compete in the same market in its discussion of the "proximity of the markets" factor above. Whether the lack of need to "bridge the gap" should also be considered as part of the fourth *Polaroid* factor is not important because a court's application of the *Polaroid* factors is not a "mechanical process." *Nabisco*, 220 F.3d at 46. It is sufficient to conclude that the presence of the products in the same market means that there is a greater likelihood of confusion.

### 5. *Evidence of Actual Confusion*

█ "[I]t is black letter law that actual confusion need not be shown to prevail under the Lanham Act, since actual confusion is very difficult to prove and the Act requires only a likelihood of confusion as to source." *Lois Sportswear*, 799 F.2d at 875. Of course, evidence of actual confusion is probative of a likelihood of confusion.

█ Friesland has offered two items in an effort to demonstrate likelihood of confusion: (1) the results of a consumer survey by Harry W. O'Neill that sought to determine to what extent, if any, consumers are likely to believe that Longevity condensed milk comes from the same source as one of the Vinamilk condensed milk cans and (2) the testimony of Trung Dang, president of Friesland's exclusive licensee, Sun Hing Foods, Inc.

a. *Survey*. For the survey, respondents were shown six cans of condensed milk, one of which featured the Longevity label and one of which featured defendants' "Old Man with Children" label. The consumers were asked various questions about their impressions of the cans. *See* Condensed Milk Survey Report of Harry W. O'Neill, dated November 2, 2001 ("O'Neill Report") (reproduced as Ex. B to Declaration of Jeffrey A. Schwab In Support of Defendants'/Counterclaim Plaintiffs' Motion to Strike The Reports and to Preclude The Testimony of Elizabeth Brotherton and Harry O'Neill, filed February 19, 2002). As described in *Friesland Brands v. Vietnam Milk Co.*, 221 F.Supp.2d 457 (S.D.N.Y. 2002) (denying motion *in limine* to exclude the O'Neill survey), the Court has concluded that despite the survey's purported flaws, it provides at least some evidence of actual confusion. While the questions asked of consumers had some leading elements, 24% of the consumers thought Friesland's product and the Vinamilk product were made by the same company. O'Neill Report at 8. If the survey were given weight by the trier of fact, it would provide enough evidence to establish actual confusion. *See Lon Tai Shing Co., Ltd. v. Koch+Lowy*, 1992 WL 18806, at *3 (S.D.N.Y. Jan. 28, 1992) (survey showing at least 18% of responses reflect actual consumer confusion "satisfies the necessary threshold for determining actual confusion in this circuit") (citing *RJR Foods, Inc. v. White Rock Corp.*, 603 F.2d 1058, 1061 (2d Cir.1979)). A central problem with the survey, however, is that it compared the Longevity can and label to Vinamilk's can and label rather than comparing the Vinamilk *trademark* to defendants' label. Thus, the results of the survey are geared to a trade dress infringement claim (which encompasses the entire packaging of the goods) rather than to a trademark infringement claim (which focuses on the actual mark). Given this problem, the survey does not provide evidence of actual confusion between the Longevity trademark and the defendants' products.

b. *Testimony of Dang*. Dang's testimony consists of reports by his salespeople regarding consumer confusion between the cans and thus is also plainly directed to a trade dress claim rather than a trademark claim. For this reason, and without reach-

ing defendants' hearsay objection to this testimony, the Court finds that this testimony could not be considered by a jury to support a claim of trademark confusion.

### 6. Defendants' Bad Faith

■ This factor considers "whether the defendant adopted its mark with the intention of capitalizing on plaintiff's reputation and goodwill and any confusion between his and the senior user's product." *Lang*, 949 F.2d at 583. With respect to the relationship of this factor to other factors, even a finding of good faith "may not outweigh other factors that suggest a likelihood of confusion." *I.P. Lund Trading ApS v. Kohler Co.*, 163 F.3d 27, 44 (1st Cir.1998). Also, "[e]vidence of bad intent, ... while potentially probative of the likelihood of confusion, is simply not required in a trademark infringement case...." *Star Fin. Servs., Inc. v. AASTAR Mortg. Corp.*, 89 F.3d 5, 11 (1st Cir.1996). Friesland offers several allegations to support its conclusion that defendants acted in bad faith in choosing their labels for the condensed milk products.

Friesland notes that Vinamilk began using the Three Gods label after the complaint was filed, thus requiring Friesland to file an amended complaint. Pl. Mem. at 6. Friesland also states that since the filing of the Amended Complaint, Vinamilk has adopted a slightly different version of the Old Man with Children label. *Id.* Friesland concludes that the defendants are therefore playing a "shell game" that would support a finding of bad faith. *Id.* This evidence, however, falls short of constituting proof that the defendants intended to capitalize on Longevity Brand's reputation or any confusion with the Longevity mark. The mere introduction of new labels during the pendency of the lawsuit has no relevance to whether the defendants adopted their labels in bad faith.

Friesland also asserts that the defendants misled the United States Patent and Trademark Examiner as to the meaning of Chinese and Vietnamese terms in order to procure trademark registration. Pl. Mem. at 7. The evidence cited, however, shows only that the defendants gave a translation of the Vietnamese words on the label, not the Chinese ideographs. *See* Knull Dec., Ex. U ("the Applicant submits that 'SUA PHUC LOC THO'" translates as "The happy, wealthy and long life Buddha."). Friesland, however, has not provided admissible evidence of what this phrase actually means.

Next, Friesland argues that its own former Vietnamese trademark firm, Invenco, was "actively advising Vinamilk in this ... action," thereby demonstrating Vinamilk's bad faith. Pl. Mem. at 3. Normally, reliance on the advice of counsel is a factor that supports a finding of good faith. *See, e.g., Sports Authority, Inc. v. Prime Hospitality Corp.*, 89 F.3d 955, 964 (2d Cir. 1996); *E.S. Originals Inc. v. Stride Rite Corp.*, 656 F.Supp. 484, 490 (S.D.N.Y. 1987). Friesland believes it improper that Invenco is now advising the defendants in this action. But there is virtually no record evidence about the nature of this supposed conflict. The only evidence in the record as to Invenco's role was that it was engaged by Friesland's lawyers to act as their "filing agent" for purposes of filing a letter with the Vietnamese National Office of Inventions that it had not even drafted. Knull Dec., Ex. T. at 2389. Inasmuch as Friesland has not explained what advantage has been obtained by Vinamilk's using Invenco, the Court cannot find that this evidence supports Friesland's claim of bad faith.

Friesland's remaining argument regarding bad faith is that Vinamilk has deliberately copied the Longevity mark. They base this contention on their evidence that

Vinamilk had actual knowledge of the Longevity mark "before any Vinamilk product entered the U.S." and that the Longevity mark was used beginning in the 1950's. *See* Pl. Mem. at 4–5. Friesland concludes that with their long and intimate knowledge of the Longevity mark, Vinamilk developed a similar label and that this development was "not mere coincidence [but] a calculated attempt at passing off" and an effort to "trade on the success of an established product of Plaintiff without ever having to build a brand." Pl. Mem. at 5–6.

Prior knowledge of a senior user's trade mark "does not necessarily give rise to an inference of bad faith and may be consistent with good faith." *Arrow Fastener,* 59 F.3d at 397; *see also Cumberland Packing Corp. v. Monsanto Co.,* 140 F.Supp.2d 241, 254–55 (E.D.N.Y.2001) (awareness of and copying of another's trade dress does not give rise to inference of bad faith; "[f]or copying to be evidence of confusion the defendant must have copied for the purpose of causing confusion"). This is particularly true where the alleged infringer is unsure as to the scope of the protection. *Cadbury Beverages v. Cott Corp.,* 73 F.3d 474, 483 (2d Cir.1996).

On the other hand, the Second Circuit has held that in determining a defendant's intent, "actual or constructive knowledge" of the prior user's mark or dress may indicate bad faith. *Mobil Oil Corp. v. Pegasus Petroleum Corp.,* 818 F.2d 254, 259 (2d Cir.1987). Where such prior knowledge is accompanied by similarities so strong that it seems plain that deliberate copying has occurred, it has upheld findings of bad faith. *See id.* at 258–59; *Paddington,* 996 F.2d at 586–87; *Charles of the Ritz Group Ltd. v. Quality King Distribs., Inc.,* 832 F.2d 1317, 1318–20, 1322 (2d Cir.1987). In addition, " 'the second comer has a duty to so … dress his product as to avoid all likelihood of consumers confusing it with the product of the first comer.' " *Mobil*

*Oil Corp.,* 818 F.2d at 259 (quoting *Harold F. Ritchie Inc. v. Chesebrough–Pond's, Inc.,* 281 F.2d 755, 758 (2d Cir.1960)). Here, a jury might reasonably conclude that the similarities between the labels are sufficiently strong that "it seems plain that deliberate copying has occurred." *Paddington,* 996 F.2d at 587.

Plaintiff has sought a ruling that Vinamilk's bad faith has been established as a matter of law. The evidence presented by the parties, however, "does not conclusively point to a finding of either good or bad faith, and this issue, like many intent issues, is best left in the hands of the trier of fact." *Sports Authority, Inc.,* 89 F.3d at 964. In reaching this conclusion, we are guided by the Second Circuit's admonition that "[s]ubjective issues such as good faith are singularly inappropriate for determination on summary judgment." *Cadbury,* 73 F.3d at 483 (quoting *American Int'l Group, Inc. v. London Am. Int'l Corp.,* 664 F.2d 348, 353 (2d Cir.1981)). Because there are disputed issues of material fact as to the good faith or bad faith of the defendants, plaintiff's cross-motion for summary judgment seeking a determination that the defendants lack good faith must be denied. *Id.* (where the evidence is inconclusive, the court "decline[s] to hold as a matter of law that the defendants have acted in bad faith").

7. *The Quality of Friesland's Products*

"This factor is primarily concerned with whether the senior user's reputation could be jeopardized by virtue of the fact that the junior user's product is of inferior quality." *Arrow Fastener,* 59 F.3d at 398. Vinamilk contends that there is no record evidence that its products are inferior to Friesland's. Def. Mem. at 22. Friesland points to the deposition of Vu Thi Tam Trinh, who apparently works for Vinamilk. He stated that he buys the milk for the

product from Vietnamese farmers and if these suppliers are insufficient to meet demand then he buys it from "all over the world, everywhere that's cheap." Knull Dec., Ex. F at 14. That Vinamilk seeks a cheap supply of milk, however, does not necessarily mean that its product is of inferior quality.

Friesland also notes that its product is made from whole milk while Vinamilk's is made from dried or powdered milk, though it provides no evidence regarding the taste, nutrition value or any other aspects of the differences between whole versus dried milk. While there may be some inherent superiority in an undoctored foodstuff compared to its dried version, the mere fact that dried milk is used in Vinamilk's product is insufficient evidence to conclude that it is of inferior quality. As a result, this factor does not favor Friesland.

### 8. *Sophistication of the Consumers*

In assessing this factor, the Court must consider " '[t]he general impression of the ordinary purchaser, buying under the normally prevalent conditions of the market and giving the attention such purchasers usually give in buying that class of goods....' " *Gillette*, 984 F.2d at 575 (citation omitted). While purchasers of expensive goods, like automobiles, may be held to a high standard of purchasing care, *see McGregor–Doniger Inc. v. Drizzle Inc.*, 599 F.2d 1126, 1137 (2d Cir.1979), "[p]urchasers of relatively inexpensive goods such as ordinary grocery store foods are held to a lesser standard of purchasing care." *Nabisco, Inc. v. PF Brands, Inc.*, 191 F.3d 208, 220 (2d Cir.1999) (citation and internal quotation marks omitted). Friesland has asserted, without contradiction, that both products sell for about one dollar each. Defendants point out that Friesland's General Manager testified that he "imagines" that the consumers use "some care" in purchasing sweetened condensed milk. Def. Mem. at 23. This is

insufficient evidence, however, to show sophistication on the part of the relevant consumers. Thus, this factor favors Friesland.

### 9. *Summary*

■ Upon consideration of each of the *Polaroid* factors, Vinamilk's motion for summary judgment as to the trademark claim must be denied. A reasonable trier of fact could conclude that the Longevity mark is a somewhat strong mark and that the Vinamilk labels have many similarities to the Longevity mark. While this is more obviously true for the "Old Man with Children" label than the "Three Gods" label, there are sufficient similarities to present the case to a jury. In addition, the Longevity mark and the defendants' labels are affixed to virtually the same inexpensive food products competing in the same market (with unsophisticated purchasers), thus increasing the likelihood of confusion. Thus, a reasonable trier of fact could conclude that the Vinamilk labels are likely to cause confusion with Friesland's mark.

### C. *Federal Unfair Competition*

■ Friesland claims that the defendants' use of the labels constitutes a false designation of origin under 15 U.S.C. § 1125(a). Vinamilk seeks dismissal of this claim simply on the ground that it encompasses the same elements as the trademark infringement claim. Def. Mem. at 14 n. 10. Indeed, the "key issue in [trademark infringement and false designation of origin] cases is whether an appreciable number of consumers are likely to be misled or confused about the source of the product in question." *Nikon Inc. v. Ikon Corp.*, 987 F.2d 91, 94 (2d Cir.1993); *see also Rosenthal A.G. v. Ritelite, Ltd.*, 986 F.Supp. 133, 139 (E.D.N.Y.1997) ("[b]oth [claims of trademark infringement under 15 U.S.C. § 1114(1) and false desig-

nation of origin under 15 U.S.C. § 1125(a) ] require proof of essentially the same elements"). Because the Court has already determined that a reasonable trier of fact could find the necessary confusion, summary judgment on this claim must be denied.

### D. *New York Unfair Competition Claim*

 To prevail on a claim of common law unfair competition under New York law, a plaintiff must prove either (1) a likelihood of confusion or actual confusion and (2) bad faith on the part of the defendant. *Jeffrey Milstein, Inc. v. Greger, Lawlor, Roth, Inc.*, 58 F.3d 27, 35 (2d Cir.1995); *Trustees of Columbia University v. Columbia/HCA Healthcare Corp.*, 964 F.Supp. 733, 750–51 (S.D.N.Y.1997). Because the Court has already concluded that a reasonable trier of fact could find bad faith, summary judgment as to this claim must be denied.

### E. *Federal Dilution Claim*

 Under the Federal Trademark Dilution Act (the "FTDA"), 15 U.S.C. § 1125(c), a plaintiff must establish five elements to make a viable claim of trademark dilution: "(1) the senior mark must be famous; (2) it must be distinctive; (3) the junior use must be a commercial use in commerce; (4) it must begin after the senior mark has become famous; and (5) it must cause dilution of the distinctive quality of the senior mark." *PF Brands*, 191 F.3d at 215. Vinamilk contends that the Court must dismiss this claim because Friesland has not established that the Longevity mark has achieved the requisite level of fame to sustain a dilution claim.

Although the statute is unclear as to the degree of fame necessary to be considered a "famous" mark under the FTDA, the Second Circuit has stated:

It seems most unlikely that Congress intended to confer on marks that have enjoyed only brief fame in a small part of the country, or among a small segment of the population, the power to enjoin all other users throughout the nation in all realms of commerce. The examples of eligible "famous marks" given in the House Report—Dupont, Buick, and Kodak, *see* H.R.Rep. No. 104–374, at 3 (1995), *reprinted in* 1995 U.S.C.C.A.N. 1029, 1030—are marks that for the major part of the century have been household words throughout the United States. They are representative of the best known marks in commerce … Putting together the extraordinary power the Act confers on a "famous" mark and the improbability that Congress intended to grant such outright exclusivity to marks that are famous in only a small area or segment of the nation, … we think Congress envisioned that marks would qualify as "famous" only if they carried a substantial degree of fame.

*TCPIP Holding Co. v. Haar Communications, Inc.*, 244 F.3d 88, 99 (2d Cir.2001).

 Thus, only marks approaching household names may qualify as "famous." *A.B.C. Carpet Co. v. Naeini*, 2002 WL 100604, at *5 (E.D.N.Y. Jan. 22, 2002) (citing *TCPIP Holding Co.*, 244 F.3d at 99); *see National Distillers Products Co., LLC v. Refreshment Brands, Inc.*, 198 F.Supp.2d 474, 486 (S.D.N.Y.2002) (the FTDA "is only intended to protect truly famous marks, such as DUPONT, BUICK, and KODAK") (citing *TCPIP Holding Co.*); *accord Prime Publishers, Inc. v. American–Republican, Inc.*, 160 F.Supp.2d 266, 277 (D.Conn.2001) ("A mark is famous if it has achieved a wide degree of recognition by the United States consumer public as the designator of the plaintiff's goods.").

■ Friesland has not put forth evidence that would allow a reasonable trier of fact to conclude that the Longevity mark is "famous" under the FTDA. The Longevity mark is hardly a household name and even Friesland's own survey expert has presumed that the mark is not famous. *See* Memorandum from Harry O'Neill to Cynthia Fareed, dated January 2, 2002 (reproduced as Ex. N to Schwab Dec.), at 2. Defendants have stated without contradiction that Friesland's sales of the Longevity brand condensed milk in the United States have never exceeded $5 million annually. *See* Defs. Mem. at 26. Numerous courts have found marks to fall short of being "famous" despite sales and advertising figures many times greater than that pertaining to the Longevity mark. *See, e.g., TCPIP Holding Co.,* 244 F.3d at 99–100 (annual sales of $280 million); *Advantage Rent–A–Car, Inc. v. Enterprise Rent–A–Car, Co.,* 238 F.3d 378, 381 (5th Cir.2001) (advertising expenditures over $130 million); *Avery Dennison Corp. v. Sumpton,* 189 F.3d 868, 879 (9th Cir.1999) (mark used for over seventy years, annual sales of $3 billion and annual advertising costs of over $5 million).

Friesland points to only one piece of evidence for its contention that its mark is famous: a review of condensed milk products in the San Francisco Chronicle that mentions the Longevity brand. *See* Knull Dec., Ex C. A short review of a product in a single city's newspaper is hardly enough to meet Friesland's burden of showing that the Longevity mark is "famous." Friesland mentions other evidence that would be offered at trial but was not included in its present submission because it is "too bulky." Pl. Mem. at 28. In opposing the present motion, however, Friesland cannot "rest upon ... mere allegations or denials," but "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). Because it has not shown that there is a genuine issue as to whether the Longevity mark is famous, the Court must grant summary judgment in favor of the defendants with respect to this claim.

## F. State Dilution Claim

■ New York's General Business Law § 360–1 (codified prior to 1997 at § 368–d) provides in its entirety:

[l]ikelihood of injury to business reputation or of dilution of the distinctive quality of a mark or trade name shall be a ground for injunctive relief in cases of infringement of a mark registered or not registered or in cases of unfair competition, notwithstanding the absence of competition between the parties or the absence of confusion as to the source of goods or services.

The statute applies not only to trademarks but to trade dress. *See Merriam–Webster, Inc. v. Random House, Inc.,* 35 F.3d 65, 73 (2d Cir.1994) (citing *20th Century Wear, Inc. v. Sanmark–Stardust Inc.,* 815 F.2d 8, 10–11 (2d Cir.1987)), *cert. denied,* 513 U.S. 1190, 115 S.Ct. 1252, 131 L.Ed.2d 133 (1995). In a recent discussion of this statute, the Second Circuit held that "New York law accords protection against dilution to marks that are distinctive as a result of acquired secondary meaning as well as to those that are inherently distinctive." *New York Stock Exchange, Inc.,* 293 F.3d at 557. The Second Circuit has also held that the statute protects only "extremely strong marks." *Bristol–Myers Squibb Co.,* 973 F.2d at 1049. *New York Stock Exchange, Inc.* is clear that no secondary meaning need be shown to prevail under the anti-dilution statute and that the plaintiff may rely solely on the "inherent" distinctiveness of the mark. 293 F.3d at 557.

Unlike the trademark infringement claim, *see* section II.B above, the anti-dilution statute applies not merely to the

Longevity trademark but also to the trade dress of the cans and labels. The Court has already noted the many similarities in the Longevity mark and the Vinamilk labels. The similarities are far greater when the Longevity label is considered because many of the color elements are the same. The Second Circuit has noted that a producer of a product has "almost unlimited" choices among the possible ways it can present its product and thus "typically a trade dress will be arbitrary or fanciful and thus inherently distinctive ... provided, of course, the trade dress is not functional." *Paddington*, 996 F.2d at 583. The Vinamilk trade dress has numerous non-functional and arbitrary elements, including its white label with blue lettering and the positioning, size, color and contents of its English, Vietnamese and Chinese phrases. For these reasons, and those described in section II.B above, a reasonable trier of fact could conclude that the Longevity trade dress has enough suggestive and fanciful elements that it qualifies as "distinctive" or even "extremely strong."

In addition, the plaintiff must show a "likelihood of dilution." *Merriam–Webster*, 35 F.3d at 73 (citation omitted). Vinamilk has not contested this aspect of plaintiff's state dilution claim on this summary judgment motion. Nonetheless, the Court notes that two of the factors that may show dilution are the "similarity of the marks" and the "sophistication of the consumer." *New York Stock Exchange, Inc.*, 293 F.3d at 558. As we have already concluded that a reasonable trier of fact could find in favor of Friesland on these elements, summary judgment on the state dilution claim is inappropriate.

G. *Section 133 Claim*

■■■ New York General Business Law § 133 provides in relevant part:

No person, firm or corporation shall, with intent to deceive or mislead the public, assume, adopt or use as, or as part of, a corporate, assumed or trade name, for advertising purposes or for the purposes of trade, or for any other purpose, any name, designation or style, or any symbol or simulation thereof, or a part of any name, designation or style, or any symbol or simulation thereof, which may deceive or mislead the public as to the identity of such person, firm or corporation or as to the connection of such person, firm or corporation with any other person, firm or corporation; nor shall any person, firm or corporation, with like intent, adopt or use as, or as part of, a corporate, assumed or trade name, for advertising purposes, or for the purposes of trade, or for any other purpose, any address or designation of location in the community which may deceive or mislead the public as to the true address or location of such person, firm or corporation.

Defendants argue only that the absence of "likelihood of confusion" supports their motion for summary judgment with respect to this claim. *See* Def. Mem. at 14 n. 10. Because there is enough evidence for a reasonable trier of fact to find a likelihood of confusion, the motion for summary judgment must be denied.

III. *CONCLUSION*

Defendants' motion is denied as to all claims except Count II of the Amended Complaint, the claim arising under FTDA, 15 U.S.C. § 1125(c), which is dismissed. *See* Amended Complaint, ¶¶ 33–37. Plaintiff's cross-motion for partial summary judgment is also denied.

SO ORDERED.