**ORAL–B LABORATORIES, INC., Plaintiff,**

v.

**MI–LOR CORPORATION, Defendant.**

No. 85 Civ. 2455 (RWS).

United States District Court, S.D. New York.

June 19, 1985.

Ciani, Randolf J. Rice, Douglas R. Tribble, San Jose, Cal., of counsel.

Pryor, Cashman, Sherman & Flynn, New York City, Cesari & McKenna, Boston, Mass., for defendant; Philip Hoffman, New York City, of counsel.

## OPINION

SWEET, District Judge.

Defendant Mi-Lor Corporation ("Mi-Lor") has moved to dismiss this trademark infringement action brought by Oral-B Laboratories ("Oral-B") on the grounds that venue is improper. In the alternative, Mi-Lor moves, pursuant to 28 U.S.C. § 1404(a) to transfer the action to the District of Massachusetts. Mi-Lor has also moved to clarify the preliminary injunction entered by this court on April 12, 1985. The motions to dismiss and to transfer are denied, and the motion for clarification is granted as set forth below.

**Prior Proceedings**

On March 31, 1985 Oral-B filed a complaint against Mi-Lor, alleging trademark infringement, 15 U.S.C. § 1114(1), false designation, 15 U.S.C. § 1125(a), unfair competition, 15 U.S.C. §§ 1125(a) and 1126(h) and (i), and New York State trademark dilution, New York General Business Law 368–d. Pursuant to a motion for a preliminary injunction, an evidentiary hearing was held on April 10, 1985. At the hearing, Mi-Lor reserved its right to challenge this court's jurisdiction. In connection with the issuance of a preliminary injunction on April 12 (Exhibit A), it was concluded that jurisdiction was properly exercised pursuant to N.Y. CPLR § 302(a)(2), that Oral-B had established secondary meaning in its trade dress, and that Mi-Lor's product infringed Oral-B's product.

**Discussion**

**1. Jurisdiction**

Liddy, Sullivan, Galway and Begler, New York City, Pillsbury, Madison & Sutro, San Jose, Cal., for plaintiff; Andrew V. Galway, Jay H. Begler, Arlana S. Cohen, New York City, Thomas P. O'Donnell, Judith E.

After the hearing on the preliminary injunction I concluded that the offering of infringing goods within the state constitutes a tortious act pursuant to N.Y.CPLR § 302(a)(2). *German Educ. Tel. v. Or.*

*Public Broadcasting,* 569 F.Supp. 1529 (S.D.N.Y.1983); *Vanity Fair Mills, Inc. v. T. Eaton Co.,* 234 F.2d 633, 639 (2d Cir. 1956), *cert. denied,* 352 U.S. 871, 77 S.Ct. 96, 1 L.Ed.2d 76 (1956) ("the wrong takes place not where the deceptive labels are affixed to the goods or where the goods are wrapped in the misleading packages, but where the passing off occurs....").

■ Jurisdiction over Mi-Lor is also properly exercised under N.Y. CPLR § 301, the traditional "doing business" jurisdictional base. In order to hold that jurisdiction may be exercised because a foreign corporation is "doing business," it is necessary to conclude that the corporation is "engaged in such a continuous and systematic course of 'doing business' here as to warrant a finding of its 'presence' in this jurisdiction.'" *McGowan v. Smith,* 52 N.Y.2d 268, 437 N.Y.S.2d 643, 645, 419 N.E.2d 321, 323 (1981), *quoting Simonson v. International Bank,* 14 N.Y.2d 281, 251 N.Y.S.2d 433, 436, 200 N.E.2d 427, 430 (1964). The test is whether "the aggregate of the corporation's activities in the State [is] such that it may be said to be 'present' in the state 'not occasionally or casually, but with a fair measure of permanence and continuity.'" *Laufer v. Ostrow,* 55 N.Y.2d 305, 449 N.Y.S.2d 456, 458, 434 N.E.2d 692, 694 (Ct.App.1982) (citations omitted).

■ The facts elicited at the hearing on April 10, establish that Mi-Lor's presence in New York is sufficiently continuous and substantial to warrant the exercise of jurisdiction pursuant to CPLR § 301. Stuart Gottsegen a principal shareholder of Mi-Lor, Mi-Lor's National Sales Manager, and listed as Mi-Lor's Vice-President on a Dun and Bradstreet Financial Report, maintains a permanent office in New York. Gottsegen maintains that he is merely an independent consultant and salesman who receives a fixed fee from Mi-Lor. In his deposition, however, Gottsegen testified that he was an employee of Mi-Lor. Gottsegen may properly be viewed as an employee whose actions subject Mi-Lor to jurisdiction. Further, Irwin Casper, Marketing Manager for Mi-Lor, estimates that in 1984 Mi-Lor had sales of $300,000 in the Southern District of New York. This presence is sufficient to warrant the exercise of jurisdiction pursuant to § 301. *See Benware v. Acme Chem. Co.,* 284 A.D. 760, 135 N.Y.S.2d 207 (App.Div.3d Dept.1954).

**2. Venue**

■ Having determined that personal jurisdiction over Mi-Lor exists, I must separately consider whether venue is proper. Venue in this action is governed by 28 U.S.C. § 1391(c) which states that a "corporation may be sued in any judicial district in which it is ... doing business...." The precise quantum of activity needed to satisfy the "doing business" requirement of § 1391(c) is unclear. *See Johnson Creative Arts v. Wool Masters,* 743 F.2d 947 (1st Cir.1984). Although some courts have held that satisfaction of a state's long-arm statute necessarily satisfies the doing business requirement, *see Cable News Network, Inc. v. AM Broadcasting, Etc.,* 528 F.Supp. 365 (N.D.Ga.1981), Courts in New York have held that venue is proper only when the contacts are sufficient to satisfy CPLR § 301, not CPLR § 302. *See Sterling Television Presentations v. Shintron Co.,* 454 F.Supp. 183 (S.D.N.Y.1978). Since personal jurisdiction can be exercised pursuant to CPLR § 301, § 1391(c) is satisfied and that venue is proper in the Southern District.

**3. Transfer**

Mi-Lor has also moved to transfer this case pursuant to 28 U.S.C. § 1404(a). Balancing the factors to be considered in 1404(a) motions, including the convenience of the parties, the ease of access to sources of proof, and practical problems relating to the expeditious resolution of the case, I deny the motion.

■ The defendants bear the burden of establishing that the factors listed above justify transferring this case. *P I, Inc. v. Valcour Imprinted Papers, Inc.,* 465 F.Supp. 1218 (S.D.N.Y.1979). Although Mi-Lor asserts that the ultimate resolution of

the case will be eased by transferring the case, the fact that Mi-Lor is a Massachusetts company is not enough to warrant that conclusion. Moreover, a preliminary injunction hearing has already been held, and it seems unwise to transfer a case after initial substantive decisions have already been made. In the absence of a substantial showing by Mi-Lor that not only convenience but the interests of justice are served by transferring the case, the motion to transfer is denied.

**4. Clarification of the Preliminary Injunction**

 Mi-Lor seeks clarification and modification of the preliminary injunction entered on April 12. Mi-Lor seeks to market a toothbrush packaged as demonstrated in Exhibit I of its moving papers. The packaging proposed by Mi-Lor in Exhibit I is not substantially different from Oral-B's, and is therefore likely to cause confusion. The alterations made do not satisfactorily allay the sources of confusion caused by the packaging that prompted this action. Despite the change in color of the central oval, the overall design of the face of the proposed package remains confusingly similar to Oral-B's for several reasons: the oval enclosing the Mi-Lor label, the visual focal point of the package, is itself nearly identical to Oral-B's oval; the Mi-Lor oval is twice situated against a white background on the front of the package in a manner identical to that of Oral-B's packaging; the printing inside the oval is similar to that inside the Oral-B oval; the placement of the descriptive labeling and horizontal lines under the package window is parallel to that of Oral-B's package; the use of the phrasing "compare with Oral-B 35 Adult" on the front of a "40 Tuft" without a clear indication that Oral-B is a competing company creates an impression that one company is comparing two of its own products; and the placement of descriptive language at the base of the Mi-Lor package is visually identical to language at the base of Oral-B's.

Because "[t]he test of consumer confusion is not whether the products can be differentiated when subjected to a side-by-side comparison, but rather whether they create the same general impression," *RJR Foods, Inc. v. White Rock Corp.*, 603 F.2d 1058, 1060 (2d Cir.1979) the subtle distinctions in packaging that Mi-Lor discusses in its papers do not overcome the similarities described above. Mi-Lor should now have sufficient guidance to remodel its package within the permissible constraints.

**Conclusion**

Mi-Lor's motions to dismiss and transfer the case are denied. The motion for clarification of the preliminary injunction is granted to the extent that Mi-Lor's proposed package is found to be prohibited by the existing injunction. All discovery will be completed by July 17, 1985 and a joint pretrial order submitted by July 24, 1985.

IT IS SO ORDERED.

### APPENDIX

### PRELIMINARY INJUNCTION

This Preliminary Injunction is entered pursuant to the decision of the Court made in open session on April 10, 1985 after a hearing on the merits, presentation of evidence, submission of written and oral argument.

IT IS HEREBY ORDERED, ADJUDGED and DECREED that Defendant, Mi-Lor Corporation, its officers, agents, servants, employees, attorneys and all persons acting in participation or in concert with it, during the pendency of this action are enjoined from manufacturing, selling, offering for sale, distributing for its own account or, that of others and/or advertising for sale, a toothbrush package bearing the tradedress of Mi-Lor as shown in Exhibit "A" hereto, and all model numbers thereof (the "Mi-Lor Package"), including the use of a blue oval design; the labelling: and/or printing and from otherwise using, selling, distributing, offering for sale or advertising a toothbrush package confusingly similar or colorably imitating the Oral-B toothbrush package tradedress.

IT IS FURTHER ORDERED, that notwithstanding the above, Defendant is not hereby precluded from (i) filling orders for a brush in the Mi-Lor Package if the same are in hand by it as of April 10, 1985 and (ii) from receiving (but not filling) new orders up to and including April 16, 1985.

And it is further ordered that plaintiff shall file a bond securing defendant against costs and damages in the amount of $10,-000.

SO ORDERED, this 12th day of April, 1985.