**ORAL–B LABORATORIES, INC., a Delaware corporation, Plaintiff-Appellee, Cross-Appellant,**

**v.**

**MI–LOR CORPORATION, a Massachusetts corporation, Defendant-Appellant, Cross-Appellee.**

**Nos. 363, 364, Dockets 86–7047, 7049.**

United States Court of Appeals, Second Circuit.

Argued Nov. 14, 1986.

Decided Jan. 20, 1987.

Philip R. Hoffman, New York City (Pryor, Cashman, Sherman & Flynn, of counsel), for defendant-appellant, cross-appellee.

Andrew V. Galway, New York City (Liddy, Sullivan, Galway & Begler, Jay H. Begler, of counsel), for plaintiff-appellee, cross-appellant.

Before FEINBERG, Chief Judge, WINTER and MANSFIELD,* Circuit Judges.

FEINBERG, Chief Judge:

Defendant Mi-Lor Corporation appeals from an order and modified preliminary injunction of the United States District Court for the Southern District of New York, Robert W. Sweet, J., finding certain of Mi-Lor's toothbrush packages in contempt of a prior injunction and enjoining, among other things, any reference on future Mi-Lor packaging to plaintiff Oral-B Laboratories. Mi-Lor argues that its packaging is neither confusingly similar to Oral-B's nor in contempt of Judge Sweet's original injunction and that Judge Sweet's modified injunction is overly broad. Oral-B claims that Judge Sweet erred by not ordering an accounting of Mi-Lor's profits from its contempt and by allowing Mi-Lor to sell certain packages already contracted for and ready to ship. We affirm in part, and modify in part.

## I. Background

Oral-B, a toothbrush manufacturer, is the market leader in its industry, with annual sales of approximately $60 million. Mi-Lor Corporation is a comparatively small manufacturer of toiletry products, including toothbrushes, with annual sales in the neighborhood of $8 million. In the fall of 1984, as part of a decision to compete aggressively with Oral-B, Mi-Lor designed new toothbrush packaging "to catch the eye of" potential Oral-B customers. The new packaging had an overall appearance similar to Oral-B's toothbrush box, which Oral-B had used consistently for ten years. Mi-Lor's packaging, like Oral-B's, included a prominent blue and white oval logo, and displayed the statement "COMPARES WITH ORAL-B." In March 1985, Oral-B sued Mi-Lor for, among other

* Judge Mansfield participated in the oral argument in this case and voted before his death on January 7, 1987 to dispose of the case in the manner set forth in this opinion.

things, trademark infringement, false designation of origin and unfair competition, in violation of the Lanham Act, 15 U.S.C. §§ 1051–1127. At the same time, Oral-B moved for a preliminary injunction to prevent Mi-Lor's use of its new packaging.

On April 12, following an evidentiary hearing, the district court issued a preliminary injunction, which appears at 611 F.Supp. 463–64, enjoining Mi-Lor from using toothbrush boxes with a blue and white oval or distinctive labeling and printing that was confusingly similar to or colorably imitated Oral-B's trade dress. Shortly thereafter, Mi-Lor redesigned its package, changing the blue and white oval to a green and white oval, and submitted the new box to Judge Sweet as part of a motion for clarification of the April 12 preliminary injunction.

In an opinion dated June 19, 1985, the district court held that the new design was also prohibited by the April 12 injunction. The court concluded that "[d]espite the change in color of the central oval, the overall design of the face of the proposed package remains confusingly similar to Oral-B's." *Oral-B Laboratories v. Mi-Lor Corp.,* 611 F.Supp. 460, 463 (S.D.N.Y.1985). The court pointed to several aspects confusingly similar to Oral-B's trade dress. Mi-Lor's packaging still had an oval as its focal point, its descriptive labeling was still placed and styled similarly to Oral-B's and it used the phrase "COMPARE WITH ORAL-B" without clearly stating that Oral-B was a competing company. Id. Judge Sweet concluded that, given this clarification, "Mi-Lor should now have sufficient guidance to remodel its package within the permissible constraints." Id. Mi-Lor did not appeal from this ruling, and does not challenge the April 12 injunction here.

In addition to using its own package, Mi-Lor started in late 1984 to market toothbrushes in "private label" boxes. Under these private label agreements, Mi-Lor places its toothbrushes in packages bearing the name of a retailer, which then sells the brush as its own brand. Following the court's clarification, Mi-Lor again redesigned its boxes. All of Mi-Lor's new packaging, including the private label packages, continued to include references to Oral-B, but also included, on the front of the box at the bottom, the legend "ORAL-B IS A COMPETING COMPANY." [1] In November 1985, Oral-B brought contempt proceedings against Mi-Lor, charging that with the private label and the new Mi-Lor brand packages, Mi-Lor had again violated the April 12 preliminary injunction.

On December 13, 1985, Judge Sweet found Mi-Lor's private label packaging of toothbrushes for Payless Drugs N.W. and K & B Inc. in contempt of the April 12 injunction. Although he did not find any of the other packages before him on Oral-B's motion to be in contempt, Judge Sweet also forbade Mi-Lor from using all the other packaging except to fill orders already received for existing toothbrush boxes. In addition, he modified the injunction to forbid reference to Oral-B on any of Mi-Lor's toothbrush boxes. Oral-B was awarded costs and attorney's fees up to $10,000 for the contempt action.

On this appeal, Mi-Lor claims that the contempt findings are erroneous, that none of the redesigned packages should have been enjoined and that the injunction against any reference to Oral-B is improper. On its cross-appeal, Oral-B argues that the district court should not have allowed Mi-Lor to fulfill existing contracts with packaging that the court had deemed likely to cause confusion, and should have ordered an accounting of Mi-Lor's profits.

II. Mi-Lor's appeal

A. *Preliminary Injunction.* Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), creates a protected right in the trade dress or total image of a package, if that trade dress "is nonfunctional and has acquired a secondary meaning in the marketplace by which it is identified with its producer or source." *LeSportsac, Inc. v.*

1. The legend on the private label packages read: ORAL-B IS A COMPETING PRODUCT.

*K Mart Corp.*, 754 F.2d 71, 75 (2d Cir. 1985). In issuing the April 12 preliminary injunction, the district court found that Oral-B's trade dress was nonfunctional, that its packaging had acquired secondary meaning and that Oral-B was threatened with irreparable injury. These findings are not contested on this appeal.

Indeed, as already indicated, entry of the April 12 injunction is not contested before us. That injunction prohibited Mi-Lor from using a toothbrush package "confusingly similar [to] or colorably imitating" Oral-B's packaging. Judge Sweet's modified injunction contained the same prohibition. Therefore, the technical issue in the district court was whether the redesigned Mi-Lor packaging before Judge Sweet at the contempt hearing was "confusingly similar" to, or "colorably imitat[ed]," Oral-B's. For convenience, we will refer to this issue as "likelihood of confusion." On this crucial point, Judge Sweet said Mi-Lor's boxes "could in my view lead to confusion on the part of the consumer." Since the sole significant evidence on likelihood of confusion before the district court was the actual toothbrush boxes, this court "is in as good a position as the district court to determine whether they are confusingly similar." *Perfect Fit Industries v. Acme Quilting Co.*, 618 F.2d 950, 954 n. 6 (2d Cir.1980). We agree with the district court.

The packages the district court enjoined at the contempt hearing have the following elements in common: they refer to Oral-B by name, they have a numbering system that gives the same impression as Oral-B's numbering system, they have a window revealing the head of the toothbrush similar to Oral-B's window and they have descriptive labeling on a white box similar to the descriptive labeling on Oral-B's white box. The combination of these factors justifies the district court's conclusion that the packages should be enjoined.

The view that Mi-Lor's packages are confusingly similar to Oral-B's is strongly supported by Mi-Lor's motive in designing the package. At the initial injunction hearing Judge Sweet remarked, in reference to the testimony of Mi-Lor's president, "The question was put 'Why is it necessary for you to adopt these color combinations and the color location of the elements? [Answer:] To catch the eye of a potential Oral-B customer.' In so doing the [Mi-Lor] package, which is the subject of the litigation, was designed." In other words, the trade dress that sparked this litigation was calculated to evoke the image of Oral-B's product. There was no evidence that Mi-Lor's motive ever shifted from this original intent. Indeed, Mi-Lor's obvious desire to stay as close to the Oral-B packaging as it thought it could suggests the contrary. "Evidence of conscious imitation is pertinent because the law presumes that an intended similarity is likely to cause confusion." *Harlequin Enterprises Ltd. v. Gulf & Western Corp.*, 644 F.2d 946, 949 (2d Cir.1981) (citations omitted).

B. *Contempt.* In addition to its findings on likelihood of confusion, the district court deemed certain packages of Mi-Lor's in contempt of its preliminary injunction. A finding of contempt will be reversed only if the district court abused its discretion, *Transgo, Inc. v. Ajac Transmission Parts Corp.*, 768 F.2d 1001, 1022 (9th Cir.1985), cert. denied, — U.S. —, 106 S.Ct. 802, 88 L.Ed.2d 778 (1986). We find no such abuse here.

By its April 12 injunction, the district court enjoined the sale of toothbrush boxes "bearing the tradedress of Mi-Lor ... including the use of a blue oval design [and the] offering for sale or advertising [of] a toothbrush package confusingly similar [to] or colorably imitating the Oral-B toothbrush package tradedress." In its June 19 clarification of the preliminary injunction, when presented with a toothbrush package having a green oval, the court concluded:

> Despite the change in color of the central oval, the overall design of the face of the proposed package remains confusingly similar to Oral-B's for several reasons: the oval enclosing the Mi-Lor label, the visual focal point of the package, is itself nearly identical to Oral-B's oval; the Mi-Lor oval is twice situated against a white

> background on the front of the package in a manner identical to that of Oral-B's packaging....
>
> ....
>
> Because '[t]he test of consumer confusion is not whether the products can be differentiated when subjected to a side-by-side comparison, but rather whether they create the same general impression,' *RJR Foods, Inc. v. White Rock Corp.*, 603 F.2d 1058, 1060 (2d Cir.1979) the subtle distinctions in packaging that Mi-Lor discusses in its papers do not overcome the similarities described above.

611 F.Supp. at 463.

In the face of these prohibitions, Mi-Lor marketed the K & B and Payless private label packages that occasioned the district court's contempt findings. The K & B package contained a colored oval with white writing inside, placed on a predominantly white box. The Payless package contained what looks like a blue oval, with white writing inside, that had the ends cut off. It too is placed on a predominantly white box. The effect of both packages is strikingly similar to that of Oral-B's trade dress.

Admittedly, the ovals on the K & B and Payless packages are neither precisely the same color nor exactly the same shape as Oral-B's oval. However, the district court's June 19 clarification of its injunction left no doubt that use of a colored oval as a "visual focal point" of the packages would be considered an infringement of Oral-B's trade dress. Furthermore, our review of the packages confirms to us that Mi-Lor ignored the district court's warning that "subtle distinctions" would not suffice if Mi-Lor's boxes created "the same general impression" as Oral-B's, 611 F.Supp. at 463. The court having found, at least as a preliminary matter, that Mi-Lor had infringed Oral-B's trade dress, it was Mi-Lor's duty to keep a safe distance from the line drawn by the district court's injunction. See, e.g., *Independent Nail & Packing Co. v. Stronghold Screw Products*, 215 F.2d 434, 436 (7th Cir.1954). In our view, Judge Sweet had adequate grounds for finding the evidence "clear and convincing," *Perfect Fit Industries v. Acme Quilting Co.*, 646 F.2d 800, 808 (2d Cir.1981), that the Payless and K & B packages not only came close to that line, but crossed it.

C. *Modified Injunction.* The district court's modified preliminary injunction forbids Mi-Lor from making any reference to Oral-B on its toothbrush boxes. Mi-Lor argues that this prohibition is overly broad; Oral-B contends that Mi-Lor's record as an infringer justifies it. We conclude that the modified preliminary injunction was within the district court's discretion.

In fashioning relief for trade dress infringement, the district court exercises "broad powers as a court of equity.... It is well settled that the district court's equity jurisdiction empowers it 'to mould each decree to the necessities of the particular case.'" *Perfect Fit Industries*, 646 F.2d at 805–06 (citations omitted). Furthermore, a party who has once infringed a trademark may be required to suffer a position less advantageous than that of an innocent party. *Conan Properties, Inc. v. Conans Pizza, Inc.*, 752 F.2d 145, 154 (5th Cir.1985); *Independent Nail & Packing Co.*, 215 F.2d at 436. In this case, Judge Sweet had twice ordered Mi-Lor to eliminate the likelihood of confusion threatened by its toothbrush boxes. Each time, however, Mi-Lor created a new box that the court held was "confusingly similar [to] or colorably imitat[ed] the Oral-B toothbrush package tradedress," in violation of the April 12 injunction. Faced with this circumstance, the district judge properly exercised his discretion to assure that future toothbrush boxes would not be confusingly similar to Oral-B's. Cf. *S.E.C. v. Manor Nursing Centers*, 458 F.2d 1082, 1100 (2d Cir.1972).

In affirming the prohibition of references to Oral-B on Mi-Lor's packaging, we are not unmindful of the decisions cited to us by Mi-Lor in support of comparative advertising. E.g., *G.D. Searle & Co. v. Hudson Pharmaceutical Corp.*, 715 F.2d 837 (3d Cir.1983); *Clorox Co. v. Stanson Deter-*

*gents, Inc.*, No. 84 Civ. 1236 (S.D.N.Y. April 22, 1985) [Available on WESTLAW, DCTU database]. It is true that comparative advertising is in the public interest whether or not it is placed on a product's packaging, see *Societe Comptoir de L'Industrie Cotonniere Etablissements Boussac v. Alexander's Dep't Stores,* 299 F.2d 33 (2d Cir.1962). But the cases supporting comparative advertising, on which Mi-Lor relies, are distinguishable. In *Clorox Co.,* the trade dress in question was already designed in a way that avoided a likelihood of confusion. In *G.D. Searle,* the district court had not considered the injunction on comparative advertising necessary for effective relief.

Mi-Lor argues that a ban on the mention of Oral-B's name on Mi-Lor toothbrush boxes creates a "cordon sanitaire" around Oral-B's trade dress, beyond the protection the Lanham Act was designed to provide. See *Miss Universe, Inc. v. Patricelli,* 408 F.2d 506, 510–11 (2d Cir.1969). Mi-Lor points out that a toothbrush package completely different from Oral-B's, using comparative advertising that left no doubt as to the product's sponsor, would not be likely to cause confusion. We agree. It is already late in the game, however, and Mi-Lor has yet to create such a box. If at some future time Mi-Lor creates a radically different trade dress, one that could not be confused with an Oral-B box, and places comparative advertising on that box, Mi-Lor could then request Judge Sweet to modify the injunction to allow the new box. See *Clorox Co.,* supra. Given the history and current posture of this case, however, we decline to disturb the modified preliminary injunction.

III. Oral-B's Appeal

A. *Award of an Accounting.* On its cross-appeal, Oral-B apparently requests an accounting of Mi-Lor's profits from its sale of toothbrushes packaged in the enjoined trade dresses. This request, however, includes two separate accountings: one for Mi-Lor's profits on the sales of Payless and K & B toothbrushes, found to be in contempt of the injunction, and the other for Mi-Lor's profits on the sale of other toothbrushes whose trade dresses, although violative of the injunction, were not grounds for holding Mi-Lor in contempt. We hold that the district court properly denied the latter award, but erred in denying an accounting of Mi-Lor's profits on the packages held to be in contempt.

The denial of an accounting for the packages that were not in contempt need occupy us only briefly. It is not settled in this circuit whether relief under section 35 of the Lanham Act, 15 U.S.C. § 1117, which provides for an award of profits derived from the infringement of registered marks, is also available for trade dress infringement in violation of section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a). See *Burndy Corp. v. Teledyne Industries,* 748 F.2d 767, 771–72 (2d Cir.1984). Even if such relief is available, however, it would be appropriate only following a resolution on the merits of the trade dress infringement issue. The award of preliminary relief does not settle this question; it remains for the ultimate trier of fact. If trade dress infringement is established following a trial, then (assuming, without deciding, that section 1117 relief is authorized) the district court might award any profits on the sale of infringing toothbrush boxes, provided that Oral-B has proven the requisite sales. *Burndy Corp.,* 748 F.2d at 771–72. We decline to decide any of the questions presented by such an award, however, until they are squarely before us. The district court was correct in denying such relief at this time.

As to an accounting for Mi-Lor's profits on the packages for which it was held in contempt, the question is a closer one. There is no doubt that an accounting of profits may be had by the complaining party in a contempt case to deter future infringements. See *W.E. Bassett Co. v. Revlon, Inc.,* 435 F.2d 656, 664–65 (2d Cir. 1970). Nonetheless, "[t]he discretionary award of either damages or profits assumes an evidentiary basis on which to rest such an award. Without such a basis there

can be no recovery." *Vuitton Et Fils, S.A. v. Crown Handbags*, 492 F.Supp. 1071, 1077 (S.D.N.Y.1979), *aff'd mem.*, 622 F.2d 577 (2d Cir.1980).

In this case, Judge Sweet had in the record before him the stipulated facts of contracts for the sale of 200,000 of the K & B brushes and 200,000 of the Payless brushes, as well as a stipulation that some shipments under these contracts had occurred. There was no evidence, however, of how many sales actually occurred or of the prices of the packages sold. Judge Sweet stated:

> [T]here was no proof of any damages, that is to say, any evidence as to the profits received by Mi-Lor as a consequence of any of the contracts for private labels involved.
>
> ....
>
> In terms of the relief, finding that the K & B and Payless packaging is contemptuous of the order, I conclude that the costs of this proceeding should be assessed against Mi-Lor. There being nothing further, no other evidence of damages or expenses or profits, I decline to enter any further relief.

We think, however, that there was sufficient evidence to require an accounting. While the amount of profits was not established at the contempt hearing (even the value of the gross sales was unproven), offending sales, and presumably profits from those sales, clearly existed. Indeed, Mi-Lor's attorney conceded at the original preliminary injunction hearing that "damages will be readily determinable based on Mi-Lor's actual sales of this product, which are accounted for by computer." Thus, had an accounting been awarded, the profits, if any, on these sales could have been determined by a special master, see *W.E. Bassett Co.*, 435 F.2d at 665. Accordingly, we reverse the denial of an accounting of the profits from the contempt and remand for a determination of their extent. The burden will be on Mi-Lor to prove any deductions for its costs from the gross revenues attributable to its contempt. See *Mishawaka Rubber & Woolen Mfg. v. S.S. Kresge Co.*, 316 U.S. 203, 206–07, 62 S.Ct. 1022, 1024–25, 86 L.Ed.2d 1381 (1942); *W.E. Bassett Co.*, 435 F.2d at 665.

■ B. *Shipping of Inventory Otherwise Enjoined.* The district court, following the contempt hearing, modified the April 12 injunction to allow Mi-Lor to ship toothbrush packages found not to be in contempt but that did violate the injunction, provided that Mi-Lor had already contracted to sell the brushes and that the packaging was already made. Mi-Lor was not allowed, however, to ship the K & B and Payless packages, which were the basis of the contempt order. Oral-B argues that the district court erred in allowing any shipments of otherwise enjoinable packages. We hold that the district court was acting within its broad discretion in fashioning preliminary relief.

It is settled that "[t]he framing of an injunctive decree responsive to the particular facts in a trademark infringement and unfair competition suit is ordinarily within the domain of the trial court." *Levitt Corp. v. Levitt*, 593 F.2d 463, 469 n. 10 (2d Cir.1979). In the preliminary injunction context, this court has allowed shipment of infringing articles in balancing the equities of the particular case. See *W.E. Bassett Co. v. Revlon, Inc.*, 354 F.2d 868 (2d Cir. 1966). In framing such an injunction, the "district court has an obligation to weigh the relative hardship to the parties," *Ideal Industries v. Gardner Bender, Inc.*, 612 F.2d 1018, 1026 (7th Cir.1979), *cert. denied*, 447 U.S. 924, 100 S.Ct. 3016, 65 L.Ed.2d 1116 (1980) (modifying preliminary injunction to allow sale of existing inventory). Here, as in *Bassett*, 354 F.2d at 872, the packages the district court permitted to be shipped were not likely to tarnish the plaintiff's reputation. Although the record is thin as to what the cost to Mi-Lor would have been if it had not been allowed to fill existing contracts with the toothbrush packages on hand, we think the district court could balance the hardships on this specific issue as it did, in favor of Mi-Lor.

Accordingly, the judgment of the district court is affirmed in part, and modified in part.