**PATSY'S BRAND, INC.,**
**Plaintiff–Appellee,**

v.

**I.O.B. REALTY, INC., Defendant–**
**Cross–Defendant–Appellant,**

**Patsy's Inc., Frank Brija, John Brecevich, Defendants–Appellants.**

**Patsy's Brand, Inc., Plaintiff–Appellee,**

v.

**Andrew Spinnell, Esq., Appellant.**

**Docket Nos. 01–9195, 01–9247(L), 01–9257(CON).**

United States Court of Appeals, Second Circuit.

Argued:  Sept. 11, 2002.

Decided:  Jan. 16, 2003.

Thomas I. Sheridan, III, New York, N.Y. (David Sack, Torys LLP, New York, N.Y., on the brief), for Defendant–Cross–Defendant–Appellant I.O.B. Realty, Inc., and Defendants–Appellants Patsy's, Inc., Brija, and Brecevich.

Andrew J. Spinnell, New York, N.Y., for Appellant.

Norman H. Zivin and Robert T. Maldonado, New York, N.Y. (Cooper & Dunham LLP, New York, N.Y., on the brief), for Plaintiff–Appellee Patsy's Brand, Inc.

Before: NEWMAN and F.I. PARKER, Circuit Judges; and UNDERHILL,* District Judge.

JON O. NEWMAN, Circuit Judge.

This appeal concerns trademark issues arising in a dispute between two New York City restaurants that for decades have operated under similar names and have recently begun selling jars of pasta sauce with similar labels. Defendants–Appellants Patsy's Inc., I.O.B. Realty Inc. ("I.O.B."), Frank Brija, and John Brecevich appeal from the April 18, 2001, judgment and the October 4, 2001, amended judgment of the District Court for the Southern District of New York (John S. Martin, District Judge), granting summary judgment to Plaintiff–Appellee Patsy's Brand, Inc., on its claims of trademark infringement, entering an injunction, awarding attorney's fees, and imposing sanctions. We conclude that summary judgment was appropriately granted, that the injunction is somewhat overbroad and must be modified, and that attorney's fees and sanctions were properly awarded. We therefore modify the injunction and otherwise affirm the judgment and amended judgment of the District Court.

## Background

*The restaurants.* For more than half a century, two restaurants that include "Patsy's" in their names have co-existed in New York City. The first, opened in 1933, is a pizzeria-style restaurant in East Harlem generally called "Patsy's Pizzeria" and sometimes called just "Patsy's." This restaurant, which we will refer to as "Patsy's Pizzeria," is currently owned by Defendant–Appellant I.O.B. Between 1994 and 1996, I.O.B. licensed Defendant Nick Tsou-

* Honorable Stefan R. Underhill of the United States District Court for the District of Connecticut, sitting by designation.

los to open five franchise locations in Manhattan under the name "Patsy's Pizzeria" or "Patsy's."

The second restaurant opened in 1944. It is generally called "Patsy's Italian Restaurant" and sometimes just "Patsy's." This restaurant, which we will refer to as "Patsy's Italian Restaurant," is located in midtown Manhattan and offers a more complete Italian style menu than that of a typical pizzeria.

In October 1994, I.O.B. applied for a service mark for a non-stylized rendition of PATSY'S PIZZERIA in connection with restaurant services. The mark was registered in December 1998. In October 1995, I.O.B. applied for a service mark for a non-stylized rendition of PATSY'S in connection with restaurant services. The mark was registered in May 1996. Prior to the present controversy, I.O.B. never sought to enforce these marks against Patsy's Italian Restaurant.

*Entry into the sauce market.* In 1993, the owners of Patsy's Italian Restaurant decided to begin selling pasta sauces in jars for retail distribution. For this purpose, they formed Patsy's Brand, Inc., the Plaintiff–Appellee in this action. In 1994, Patsy's Brand began manufacturing and distributing its pasta sauces. These sauces are sold at retail in stores throughout the United States and on the Internet. Sales of Patsy's Brand sauces currently exceed one million dollars annually.

Patsy's Brand owns a U.S. Trademark for a stylized rendition of PATSY'S PR SINCE 1944 in connection with sauces. We discuss this mark in detail below. Patsy's Brand applied for this trademark in June 1993 and obtained registration in January 1995.

At some time after Patsy's Brand began manufacturing its sauces, the Defendants also began rather modest marketing of jars of pasta sauce with a label similar in many respects to that of Patsy's Brand's. In the instant litigation, the Defendants made different representations to the District Court as to when their sales of sauce began, initially claiming to have sold sauces as early as 1993. On appeal, the Defendants claim to have begun selling jars of pasta sauce in 1999. Brief for Appellants at 16. They concede that they did not begin to sell sauce with the challenged label until after Patsy's Brand had entered the market. *Id.* at 19–20.

The Defendants' pasta sauce was offered for sale at Patsy's Pizzeria restaurant and franchise locations in New York City but was never sold at retail. Tsoulos, operator of five of the six locations at which the sauce was offered for sale, testified that only two jars were ever sold at his locations. However, the challenged jar label includes a UPC code, indicating possible plans to begin retail sales in the future. The label also displays a toll-free number through which sauce can be ordered, and I.O.B. reserved the web domain name <www.patsysauce.com>.

*Sauce jars and labels.* Patsy's Brand sauces are sold in clear glass jars with gold-colored screw-on lids and printed labels. The stylized "Patsy's" logo appears in large type in the upper center of the label, flanked by identical inward-facing profiles of a classical statue. In small type, the initials "PR" (apparently for "Patsy's Restaurant") appear enclosed in a circle as part of the logo. To the lower right of the logo appear the words "Since 1944," also in small type. The identification of the flavor of the sauce appears at the bottom of the label in white capital bold letters on a rectangular field of a different color than the label background. Gold borders line the top and bottom of the label. The background color of the label varies according to the flavor of the

sauce. On one flavor of sauce, the label background is green.

The Defendants' sauces are sold in clear glass jars with gold-colored screw-on lids and printed labels. The upper portion of the Defendants' jars are slightly more tapered than those of Patsy's Brand's. The word "Patsy's" appears in script at an angle in the center of the label. The words "Since 1933" appear to the lower right of the word "Patsy's." The label includes a registration symbol beside the "Patsy's" logo, even though the Defendants do not have a federally registered trademark for use of a mark with sauces. The label also includes the design of a woman sipping from a wine glass that is identical to an image that appears on menus in Patsy's Pizzerias. The label states that the sauce is distributed by "Patsy's Restaurant, New York, New York"; the word "Pizzeria" does not appear on the label. The label has a green background and is bordered in gold at the top and bottom. The script typeface of the logo mirrors that used on the signs and menus in Patsy's Pizzerias, and the green color is the same as that used on the outside of the restaurant.

*Proceedings before the Patent and Trademark Office.* In August 1997, Patsy's Brand applied for trademark protection of a non-stylized rendition of PATSY'S to be used in connection with sauces. The application was denied by the Patent and Trademark Office ("PTO") on the grounds of likely confusion with the marks previously registered by I.O.B. for Patsy's Pizzeria.

In October 1998, I.O.B. filed a petition with the Trademark Trial and Appeal Board ("TTAB") of the PTO seeking to have Patsy's Brand's 1995 registration for its sauce label cancelled. Patsy's Brand then initiated cancellation proceedings seeking to cancel I.O.B.'s registration of PATSY'S PIZZERIA and PATSY'S for restaurant services. The proceedings of the TTAB were suspended in June 2000, pending disposition of the current litigation.

*Procedural history.* In October 1999, Patsy's Brand filed a complaint in the Southern District of New York against Patsy's Inc., I.O.B., its controlling officers Brija and Brecevich, and franchise operator Tsoulos. The complaint alleged trademark infringement, trade dress infringement, unfair competition, and false advertising.

In opposition to the Plaintiff's motion for a preliminary injunction, the Defendants submitted false evidence purporting to show that I.O.B. had sold jars of sauce with its present label as early as 1993, prior to Patsy's Brand's entry into the sauce market. In support of this contention, the Defendants submitted a label that they had allegedly used in 1993 and a printer's invoice allegedly showing ordering of the label in 1993. The probative value of these documents was destroyed by evidence that a bar code on the label did not exist until at least 1998 and the area code for a phone number on the invoice did not exist until some time after 1993. After the fraudulent nature of the documents was revealed, the Defendants abandoned their reliance on them as evidence of early use of their sauce label.[1]

Brija then stated in a declaration submitted to the Court that the Defendants' sauce had been sold in jars as early as 1993 but under a slightly different label. The District Court found this claim to be false because the second label proffered as the true 1993 label included a registration mark, yet I.O.B. Realty did not own any

1. The District Court made no finding that Tsoulos was involved in the submission of the fraudulent documents, and no attorney's fees or sanctions were assessed against him.

registered trademarks for PATSY'S PIZZERIA or PATSY'S in 1993.

Both sides moved for summary judgment. On April 18, 2001, the District Court entered judgment for Patsy's Brand, granting permanent injunctive relief. The injunction not only prohibited use of the Defendants' sauce label, but also cancelled I.O.B.'s trademark for PATSY'S for restaurant services and enjoined the Defendants from listing or identifying their restaurant business as "Patsy's" or "Patsy's Restaurant" in any telephone directory, sign, or advertisement.

Following the entry of final judgment, Patsy's Brand moved for attorney's fees and sanctions, and I.O.B. cross-moved for sanctions. The District Court granted Patsy's Brand's motion for attorney's fees pursuant to the Lanham Act, 15 U.S.C. § 1117(a) (2000), sanctioned Brija for contempt of court for his submission of the fraudulent invoice, and sanctioned Defendants' attorney Andrew Spinnell pursuant to 28 U.S.C. § 1927 (2000) for filing a vexatious cross-motion for sanctions. An amended final judgment including these sanctions was entered on October 4, 2001.

### Discussion

#### I. The Trademark Issues

The District Court resolved two sets of trademark issues in favor of Patsy's Brand. First, the Court rejected the Defendants' contention that PATSY'S PR SINCE 1944 as a mark for sauces is invalid because it infringes on I.O.B.'s preexisting marks PATSY'S PIZZERIA and PATSY'S in connection with restaurant services. Second, the Court ruled that the Defendants' label for their sauce is confusingly similar to the label validly used by Patsy's Brand for its sauce. In making both of these rulings, the Court carefully analyzed the well known *Polaroid* factors. *See Polaroid Corp. v. Polar-*

*ad Electronics Corp.*, 287 F.2d 492, 495 (2d Cir.1961). Before reviewing these rulings, we consider the standard of review.

#### A. Standard of Review

■ "The district court's ultimate balancing of the *Polaroid* factors is always subject to *de novo* review," *Cadbury Beverages, Inc. v. Cott Corp.*, 73 F.3d 474, 478 (2d Cir.1996), and such review is *a fortiori* applicable on review of a grant of summary judgment, *Nabisco, Inc. v. Warner-Lambert Co.*, 220 F.3d 43, 45 (2d Cir.2000). Patsy's Brand concedes that the standard of review is *de novo* as to the District Court's ultimate conclusion of likely confusion, but argues that we should examine the District Court's findings concerning the "predicate facts," by which the Plaintiff appears to mean the subsidiary findings concerning each of the *Polaroid* factors, only for clear error, even on review of a grant of summary judgment. Although certain passages from prior opinions of this Court may be read to support this position, our holdings demonstrate a more cautious approach.

■ In *Cadbury Beverages*, we observed that "the district court's findings with regard to each of the *Polaroid* factors 'are entitled to considerable deference,' even on appeals from summary judgment." 73 F.3d at 478 (*quoting Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co.*, 799 F.2d 867, 873 (2d Cir.1986)). However, we went on to caution: "If a factual inference must be drawn to arrive at a particular finding on a *Polaroid* factor, and if a reasonable trier of fact could reach a different conclusion, the district court may not properly resolve that issue on summary judgment." *Id.* In *Cadbury* we held that the District Court had improperly drawn inferences in favor of the moving party, and vacated the grant of summary judgment. *See id.* at 480–82. *See also The Sports*

*Authority, Inc. v. Prime Hospitality Corp.,* 89 F.3d 955, 965–66 (2d Cir.1996).[2] Nothing in our prior holdings suggests that a district court deciding a motion for summary judgment in a trademark infringement case has any greater discretion than it would have in a non-trademark case to resolve disputed issues of fact or draw inferences against the non-moving party. On undisputed facts, the District Court is owed some deference in its subsidiary conclusions as to each *Polaroid* factor, but such conclusions are not immune from appellate review. For example, there is a considerable component of law in the determination whether a mark has the degree of strength necessary to weigh in favor of the party claiming infringement.

### B. The Defendants' Infringement Claim

Although not asserting any claim for affirmative relief, the Defendants assert, as a defense to the infringement claim brought by Patsy's Brand, that Patsy's Brand's mark for sauces is invalid because its use infringes I.O.B.'s preexisting marks PATSY'S PIZZERIA and PATSY'S for restaurant services. Applying the *Polaroid* factors, the District Court found that Patsy's Brand's sauce mark did not infringe I.O.B.'s restaurant marks. Although the Court's analysis may well have been correct, we conclude that a more fundamental threshold matter renders the *Polaroid* analysis unnecessary and defeats the Defendants' challenge to the validity of Patsy's Brand's mark for its sauces.

■ In claiming that Patsy's Brand's sauce mark infringes the Defendants' restaurant marks, the Defendants are in essence advancing a "bridging-the-gap" argument, contending that the sauce market is sufficiently related to the restaurant market such that the proprietor of a mark for a restaurant can prevent another's use of a similar mark in the sauce market in order to preserve the proprietor's opportunity to enter that market in the future using its restaurant mark. However that contention might fare in the usual run of "bridging-the-gap" cases, *see Scarves by Vera, Inc. v. Todo Imports Ltd.,* 544 F.2d 1167, 1172–75 (2d Cir.1976) (apparel designer can protect future opportunity to use its clothing mark to market cosmetics, toiletries, and perfume), it is unavailable in this case because of laches. For several decades, the Defendants have accepted the existence of Patsy's Italian Restaurant operating in New York City with a name similar to that of Patsy's Pizzeria. Having done so, they cannot now prevent those associated with Patsy's Italian Restaurant from now selling sauce under a label that builds on the goodwill associated with the name of that restaurant, and preserve for the Pizzeria the right at some later time to use its goodwill to market its sauce.

■ The doctrine of laches often prevents a senior user from challenging a junior user's activities even in the same market. *See, e.g., Conopco, Inc. v. Campbell Soup Co.,* 95 F.3d 187, 191–94 (2d Cir.1996). Where the junior user operates in a market separate though related to that of the senior user, the senior user's "right to preempt is a very slender thread indeed," *Dwinell–Wright Co. v. White*

---

**2.** In *Nabisco,* on review of a denial of a summary judgment motion, we stated that "the predicate facts are reviewed on a clearly erroneous standard," 220 F.3d at 46., but it is uncertain whether that statement referred to historical facts that were the predicate for the finding as to each *Polaroid* factor, *e.g.,* how many advertising dollars the plaintiff had spent, or the finding concerning the *Polaroid* factor itself, *e.g.,* the strength of the mark. Nothing turned on this ambiguity because the facts of the case were undisputed. *Id.*

*House Milk Co.*, 132 F.2d 822, 825 (2d Cir.1943) (L.Hand, J.), and is easily lost due to delay, *id.* at 824–26; *see Physician's Formula Cosmetics, Inc. v. West Cabot Cosmetics, Inc.*, 857 F.2d 80, 82–83 n. 1 (2d Cir.1988); *Polaroid*, 287 F.2d at 497–98. Where, as here, the senior user has tolerated for decades the junior user's competition in the *same* market with a name similar to that of the senior user, the justification for preserving for the senior user use of a dominant component of its name in a related field vanishes entirely. In such circumstances, protection for use of the common feature of the two names in the related field belongs to the first entrant into that field. When a senior user delays in enforcing its rights, a junior user may acquire a valid trademark in a related field, enforceable against even the senior user. *Physicians Formula Cosmetics*, 857 F.2d at 82–83 n. 1.

We recognize that "[t]rademark laws exist to protect the public from confusion." *Hermes International v. Lederer de Paris Fifth Ave., Inc.*, 219 F.3d 104, 107–08 (2d Cir.2000). The failure of I.O.B. and its predecessors to police its restaurant marks against Patsy's Italian Restaurant has perhaps created a certain degree of now unavoidable confusion in the New York City market for restaurant services. As a result, it is possible that the first to enter the sauce market with a common feature of the restaurant names will precipitate some confusion among customers of Patsy's Brand's who might think that the sauce comes from the older restaurant. But that risk is far preferable to denying the first to market sauce the opportunity to capitalize on the goodwill of the slightly younger restaurant. We hold that the trademark PATSYS PR SINCE 1944 is a valid trademark enforceable against the Defendants.

C. The Plaintiff's Infringement Claim ·

■ A defendant will be held to have infringed on a protected mark if " 'numer-

ous ordinary prudent purchasers are likely to be misled or confused as to the source of the product in question because of the entrance in the marketplace of defendant's mark.' " *Arrow Fastener Co. v. Stanley Works*, 59 F.3d 384, 390–91 (2d Cir.1995) (*quoting Gruner + Jahr USA Publishing v. Meredith Corp.*, 991 F.2d 1072, 1077 (2d Cir.1993)). Likelihood of confusion is usually determined by reference to the eight-factor *Polaroid* test, and in this case the District Court carefully analyzed each factor.

■ *Strength of the mark.* To determine the strength of a mark, a court examines the mark's " 'tendency to identify the goods sold under the mark as emanating from a particular, although possibly anonymous, source.' " *Arrow Fastener*, 59 F.3d at 391 (*quoting McGregor–Doniger, Inc. v. Drizzle, Inc.*, 599 F.2d 1126, 1131 (2d Cir. 1979)). Strength of trade dress is similarly analyzed. *Bristol–Myers Squibb Co. v. McNeil–P.P.C., Inc.*, 973 F.2d 1033, 1044 (2d Cir.1992). The Defendants contend that PATSY'S PR SINCE 1944 should be considered weak because its dominant feature is a personal name.

■ A personal name alone is a descriptive mark, and as such is generally weak unless there is evidence of secondary meaning. *Cf. 815 Tonawanda Street Corp. v. Fay's Drug Co.*, 842 F.2d 643, 648 (2d Cir.1988) (examining strength of name mark for purposes of determining common-law protection). However, a personal name rendered in a distinctive lettering style may be considered strong even without a showing of secondary meaning. *Cf. Gruner + Jahr*, 991 F.2d at 1077–78 (holding the otherwise descriptive mark PARENTS to be strong in its stylized form). Here, the protected mark is a distinctive rendition of a name in script let-

tering accompanied by initials and a date as well as arbitrary design elements. As such, the strength of the mark favors the Plaintiff.

Although the District Court did not explicitly consider the strength of Patsy's Brand's trade dress, the "total image of [the] product," *LeSportsac, Inc. v. K Mart Corp.*, 754 F.2d 71, 75 (2d Cir.1985), including its "size, shape, . . . color combinations, texture [, and] graphics," *id.* at 75, is sufficiently distinctive that consumers would be able to immediately identify Patsy's Brand products as such. The strength factor also weighs in the Plaintiff's favor on the trade dress claim.

■■■ *Similarity of the marks.* The District Court correctly weighed this factor in favor of Patsy's Brand, both as to trademark and trade dress. The script used for "Patsy's" on the Defendants' label, and the notation "since 1933" bear a striking similarity to elements of Patsy's Brand's registered trademark. Other elements of the labels are appropriately considered as part of the trade dress claim, and, as such, the similarities in bordering, location of design elements, and coloring combine to create undeniably similar impressions upon the viewer. The similarity factor strongly favors the Plaintiff.

■■■ *Proximity of the products.* Both products are relatively expensive "gourmet" sauces sold in jars. Nonetheless, the Defendants contend that confining sales of their sauce to their pizzeria locations puts sufficient distance between the marketing channels for the two sauces to alleviate any risk of confusion. The District Court found that the Defendants' present decision to restrict sales to its restaurant and franchises might somewhat weaken the showing of proximity but nonetheless did not tip this factor in Defendants' favor. We agree. The products appeal to the same consumers, and sale locations are geographically close. Consumers who visit a Patsy's Pizzeria are reasonably likely to visit nearby retail stores where Patsy's Brand sauces are sold, creating the opportunity for confusion.

*Likelihood of bridging the gap.* Since the sauce products are in direct competition, this factor is not relevant. *See, e.g., Paddington Corp. v. Attiki Importers & Distributors, Inc.*, 996 F.2d 577, 586 (2d Cir.1993).

*Actual confusion.* The record contains some evidence of actual confusion, most of which is the Defendants' self-damaging evidence of "reverse confusion." *See Banff, Ltd. v. Federated Department Stores, Inc.*, 841 F.2d 486, 490 (2d Cir.1988) (explaining "reverse confusion"). Although no customer bought a jar of the Defendants' sauce thinking it was made by the Plaintiff (normal confusion), in a few instances, a customer of the Defendants' restaurant bought, or at least saw, a jar of the Plaintiff's sauce, thinking it came from the Defendants (reverse confusion). In view of the limited time that the Defendants were selling their sauce and the small number of their sales, these few instances of reverse confusion adequately support the District Court's weighing the actual confusion factor in favor of Patsy's Brand.

*Good faith in adopting the mark.* The District Court found this factor to "weigh heavily" in favor of Patsy's Brand, based on similarities in the marks and label designs and on the Defendants' presentation at trial of fabricated evidence. *Patsy's Brand, Inc. v. I.O.B. Realty, Inc.*, 99-CV-10175, 2001 WL 170672, at *12–*13 (S.D.N.Y. Feb. 21, 2001). We do not agree that this conclusion can be reached on summary judgment. The evidence as to similarity might permit an inference of bad faith, but does not require one. The Defendants' misconduct at trial does not indicate bad faith in adopting the mark, only

illegal conduct in trying to protect it. The "bad faith" factor cannot be counted in favor of the Plaintiff in the *Polaroid* analysis, although, as we discuss below, the misconduct is relevant on the issues of attorney's fees and sanctions.

*Quality of products.* The District Court concluded that, although there was no reliable evidence that either sauce was of superior quality relative to the other, this factor weighed in favor of Patsy's Brand because some people would like one sauce more than the other and that Patsy's Brand was "entitled to have consumers judge the quality of its product without being confused by Defendants' sauce . . . ." *Id.*, at *13. In the absence of undisputed evidence supporting the superiority of Patsy's Brand's product, this factor cannot be enlisted in the Plaintiff's favor on summary judgment.

*Sophistication of the consumer.* The District Court weighed this factor in favor of Patsy's Brand, correctly observing that "pasta shoppers are ordinary consumers of inexpensive retail products," *id.*, and would likely be confused by similar labels bearing similar marks. Judge Martin was entitled to make this assessment in view of the nature of the product, *see Lever Brothers Co. v. American Bakeries Co.*, 693 F.2d 251, 259 (2d Cir.1982) ("The ordinary purchaser of bread and margarine is a casual buyer, and the bustling, self-service atmosphere of a typical supermarket makes careful examination of products unlikely, and [the District Judge] so concluded."), and its low price, *see Harold F. Ritchie, Inc. v. Chesebrough–Pond's, Inc.*, 281 F.2d 755, 762 n. 19 (2d Cir.1960) (buyer sophistication is usually low "where inexpensive products are involved"). The Defendants endeavored to counter these commonsense assessments with an expert who opined generally that New Yorkers "tend to be savvy and knowledgeable about restaurants and food." We think this factor was properly weighed in favor of Patsy's Brand, although perhaps not significantly.

*Aggregate assessment.* Despite our disagreement with the District Court's view that the "bad faith" and "product quality" factors can be weighed in favor of the Plaintiffs, at least on summary judgment, Judge Martin's assessment of the other *Polaroid* factors amply supports his ultimate conclusion that the Plaintiff has shown a sufficient likelihood of confusion to prevail. The parties' products are in direct competition, Patsy's Brand's stylized mark and trade dress have adequate strength, the Defendants' mark and dress bear a strikingly close resemblance to those of the Plaintiff's, there is some evidence of actual confusion, and the consumers of these products are not highly sophisticated purchasers. The only reasonable conclusion that may be reached from the undisputed evidence is that the Defendants have infringed Patsy's Brand's trademark and trade dress.

## II. The Scope of the Injunction

The Defendants contend that in four respects the injunction is overly broad. Two challenges concern the Defendants' marketing of pasta sauce and other packaged food products: the Defendants contend that the injunction should not regulate their marketing of packaged food products other than pasta sauces and should not prohibit them from using the name PATSY'S PIZZERIA for pasta sauce. Two other challenges concern the Defendants' marketing of their pizzeria: the Defendants contend that the injunction should not prohibit them from identifying their restaurant business as "Patsy's" or "Patsy's Restaurant" and should not require cancellation of their trademark registration for PATSY'S for restaurant services.

**220**

■ "Injunctive relief should be narrowly tailored to fit specific legal violations. Accordingly, an injunction should not impose unnecessary burdens on lawful activity." *Waldman Pub. Corp. v. Landoll, Inc.,* 43 F.3d 775, 785 (2d Cir.1994) (citations omitted). Thus, we have required further tailoring of injunctions issued by district courts in trademark cases where the injunction "[went] beyond the scope of the issues tried in the case." *Starter Corp. v. Converse, Inc.,* 170 F.3d 286, 300 (2d Cir.1999). Nevertheless, we have also recognized that "a party who has once infringed a trademark may be required to suffer a position less advantageous than that of an innocent party," *Oral–B Laboratories, Inc. v. Mi–Lor Corp.,* 810 F.2d 20, 24 (2d Cir.1987), and "a court can frame an injunction which will keep a proven infringer safely away from the perimeter of future infringement," 5 *McCarthy on Trademarks and Unfair Competition* § 30:4, at 30–12 (4th ed.2002). In applying these principles to the District Court's injunction, we must keep in mind the unusual context of two restaurants operating for decades in the same city with similar names and the use of a dominant feature of those names, "Patsy's," in the recent marketing of a food product.

■ *Applying injunction to the Defendants' packaged food products.* The District Court acted well within its discretion in applying the injunction not only to the Defendants' marketing of pasta sauce but also to their marketing of "packaged food products." Injunction, ¶¶ 4(a), 4(d), 4(e), 4(g), and 7. Having been the first to bridge the gap from restaurant services to pasta sauce, the Plaintiff is entitled to preserve its opportunity to bridge the gap from pasta sauce to other packaged food products. Whatever goodwill it develops in the marketing of pasta sauce is entitled to be enjoyed in the marketing of other food products, without encountering confusingly similar marketing by the Defendants.

*Using "Patsy's Pizzeria" for pasta sauce.* Although the injunction does not explicitly prohibit the Defendants from using the name "Patsy's Pizzeria" in marketing their pasta sauce, the Defendants apprehend that its terms will be so interpreted. That apprehension has recently been realized by the District Court's August 27, 2002, ruling that the Defendants violated the injunction by selling sauce with a label that identified the seller as "Patsy's Pizzeria." *Patsy's Brand, Inc. v. I.O.B. Realty, Inc.,* CIV.A. 99–CIV–10175, 2002 WL 1988200 (S.D.N.Y. Aug.27, 2002). Whether the label that precipitated that ruling is sufficiently similar to the Plaintiff's label and trade dress for its pasta sauce to violate the injunction as currently written, a matter we do not decide (and could not decide with the challenged labeling absent from our record), we agree with the Defendants that the injunction should be modified to permit some, although very limited, use of the name of the Defendants' restaurant in their marketing of pasta sauce and other packaged food products.

In view of the long-standing use of the name "Patsy's Pizzeria" to identify their restaurant, the Defendants are entitled to include in their labeling of pasta sauce and other packaged food products that they produce a modestly sized identification that the product comes from the establishment that operates "Patsy's Pizzeria." *See Scarves by Vera,* 544 F.2d at 1175 (permitting defendant to use its tradename "in small type, but only in conjunction with other words which prevent any likelihood of confusion"). Such identification must not exceed 10–point type, must be a minor component of the labeling, must use the name "Patsy's Pizzeria" in full with the lettering of both words in the same size

and font, must not use a font that is similar to that used by the Plaintiff, and must use the name only to identify the maker or distributor of the product.[3]  Apart from this modification to permit the Defendants narrow leeway to identify the source of their products, the injunction's prohibition against marketing pasta sauce and other packaged food products with labeling or trade dress confusingly similar to that of the Plaintiff is affirmed.

■ *Identifying the Defendants' restaurant business as "Patsy's" or as "Patsy's Restaurant."*  We agree with the Defendants that the injunction exceeds the proper scope of this litigation by purporting to restrict the Defendants' identification of their restaurant business. Injunction, ¶ 4(f).  The restaurants have coexisted with similar names for decades. Indeed, that circumstance has inured to the benefit of the Plaintiff by affording it the opportunity to use the dominant feature of its name, "Patsy's," in its sauce labeling, despite the prior use of that same feature in the name of the Defendants' restaurant.  Having secured that benefit in a suit concerned with its recent decision to market pasta sauce, the Plaintiff cannot use this litigation to restrict the way the Defendants have been identifying their restaurant business for several decades.  Whether or not such relief might be warranted in a suit concerned with restaurant services is beyond the scope of this litigation.  Although we conclude that the injunction should be confined to the marketing of pasta sauce and food products and should not reach the Defendants' restaurant business, we suggest to both sides that henceforth they would be well advised to minimize the risk of confusion by identifying their restaurants by the complete names:

"Patsy's Italian Restaurant" and "Patsy's Pizzeria."

*Cancelling the Defendants' trademark registration for PATSY'S for restaurant services.*  For the reasons just stated, we also conclude that the provision requiring cancellation of the Defendants' registration of PATSY'S for restaurant services, Injunction ¶ 5, exceeds the scope of this litigation and should be deleted.

### III.  Attorney's Fees and Sanctions

■ The Lanham Act authorizes the award of attorney's fees to prevailing parties in "exceptional cases," 15 U.S.C. § 1117(a), which we have understood to mean instances of "fraud or bad faith," *Twin Peaks Productions v. Publications International, Ltd.,* 996 F.2d 1366, 1383 (2d Cir.1993) (*quoting Transgo, Inc. v. Ajac Transmission Parts Corp.,* 768 F.2d 1001, 1004 (9th Cir.1985)), or "willful infringement," *Bambu Sales, Inc. v. Ozak Trading Inc.,* 58 F.3d 849, 854 (2d Cir. 1995).  The District Court awarded the Plaintiff its attorney's fees in the amount of $250,351.56 because of the Defendants' misconduct in presenting fraudulent documents during the course of the litigation. That ruling raises the issue of whether attorney's fees may be awarded in Lanham Act litigation not only for willful infringement but also for acts of fraud in the course of conducting trademark litigation.

Prior to Judge Martin's fee award in this case, two other judges of the Southern District had relied on misconduct in the course of trademark litigation to support an award of attorney's fees, although the litigation misconduct was in addition to willful infringement.  *See Sara Lee Corp. v. Bags of New York, Inc.,* 36 F.Supp.2d 161, 170 (S.D.N.Y.1999) (Motley, J.); *Guess?, Inc. v. Gold Center Jewelry,* 997

---

**3.**  A suitable example would be "Made by the operators of Patsy's Pizzeria, New York, N.Y."

F.Supp. 409, 412 (S.D.N.Y.1998) (Kaplan, J.). In the pending case, an award of attorney's fees would not have been warranted in the absence of the litigation misconduct because the Defendants had a good faith basis for resisting the Plaintiff's suit in view of the PTO Examiner's ruling that the Plaintiff could not use its mark for sauces.

We agree with Judge Martin that fraudulent conduct in the course of conducting trademark litigation permits a finding that a case is "exceptional" for purposes of an attorney's fee award under the Lanham Act. Although such misconduct might be sanctioned as a contempt or pursuant to 28 U.S.C. § 1927 without a shifting of all attorney's fees, a party that seeks to prevail in trademark litigation through fraudulent means has no basis for complaint that it risks liability for its adversary's attorney's fees. And the need to deter such misconduct justifies an award of up to the entire fee, in the exercise of a district judge's discretion, without the need for apportioning precisely how much litigation expense was attributable to the misconduct.

▇▇▇ Judge Martin also ruled that Brija, the person primarily responsible for the submission of the fraudulent invoice, should be sanctioned for contempt in an amount equal to fifty percent of the attorney's fees and expenses that the Plaintiff incurred starting on October 27, 1999, which appears to be the date when Brija submitted the fraudulent invoice.[4] Brija does not dispute his liability for a sanction, but contends that the amount is excessive.

We think the award was well within the Judge's discretion.

▇▇▇ In addition to the sanction imposed on Brija, Judge Martin imposed a sanction of $5,000 on Atty. Andrew J. Spinnell, pursuant to 28 U.S.C. § 1927, for his misconduct in making a motion to sanction the Plaintiff. Judge Martin acted well within his discretion in finding that Spinnell's motion was frivolous and undertaken for "some improper purpose." *Oliveri v. Thompson,* 803 F.2d 1265, 1273 (2d Cir. 1986). Indeed, in this Court, Spinnell acknowledges the improper purpose in stating that one of his motives in making a motion to sanction the Plaintiff "was to apply pressure on Plaintiff and its counsel" to produce some billing records that Spinnell was endeavoring to obtain after the discovery deadline had passed. Brief for Appellant Spinnell at 9.

### Conclusion

We modify the injunction entered April 18, 2001, by deleting ¶¶ 4(f) and 5, and construing the injunction to permit the Defendants to include in their labeling of pasta sauce and other packaged food products that they produce a modestly sized identification that the product comes from the establishment that operates "Patsy's Pizzeria"; such identification must not exceed 10-point type, must be a minor component of the labeling, must use the name "Patsy's Pizzeria" in full with the lettering of both words in the same size and font, must not use a font that is similar to that used by the Plaintiff, and must use the

---

4. The District Court's opinion imposing the sanction on Brija initially states that he should "reimburse Plaintiff for 50% of the legal fees and expenses it incurred *starting on* October 27, *1999*" (emphases added). However, the opinion subsequently states that it is requiring payment of "50% of the attorneys' fees and expenses it incurred *as of* October

27, *2001*" (emphases added). The opinion calculates this sum as $99,834.63, which is the amount of the sanction imposed on Brija by the amended judgment entered October 5, 2001. The parties have overlooked this inconsistency in the opinion. We will assume that the reference to "starting on October 27, 1999" is correct.

name only to identify the maker or distributor of the product. We affirm the judgment entered July 18, 2001, as modified, and affirm the amended judgment entered October 4, 2001. The Appellee may recover two-thirds of its costs.